McCORKLE v. THE CHICAGO, ROCK ISLAND & PACIFIC R'Y CO.

1. **Railroads**: INJURY TO PASSENGER: CLIMBING ON MOVING FREIGHT CAR: NEGLIGENCE. Where plaintiff, having cattle upon defendant's train, was entitled to ride in the "caboose," but, being some distance in front of the "caboose" when the train started, and when it had attained such a rate of speed that he thought he would not be able to mount the "caboose" when it came along, he attempted, in the night time, with his right hand incumbered with a lantern and a prod-pole, to climb upon one of the freight cars of the train, *held* that he was, as a matter of law, guilty of contributory negligence; and these facts appearing from plaintiff's own testimony, the court should, on defendant's motion, have directed a verdict in its favor.

*Appeal from Marion District Court.*

TUESDAY, OCTOBER 2.

ACTION to recover for personal injuries received by plaint-

iff. There was a judgment for plaintiff upon a verdict in his favor. Defendant appeals. The facts are fully stated in the opinion.

*M. A. Low*, for appellant.

*Stone, Ayers & Co.*, for appellee.

BECK, J.—I. The undisputed facts of the case relating to the injury and the cause thereof, as shown by plaintiff's own testimony, are as follows:

The plaintiff, with two or three men in his employment, accompanied six carloads of cattle which were transported for him upon defendant's railroad. Upon reaching Joliet, Illinois, he was informed by the conductor of the train that it would stop fifteen minutes for the purpose of giving plaintiff an opportunity to inspect the cattle, and, if any of them were found "down," to give them necessary attention. After the train had stopped, plaintiff, with a lantern and prod-pole, accompanied by his men, commenced the inspection of the cattle. All being on the same side of the train, it was found that, as it was quite dark, the condition of the cattle could not be discovered without a light on the other side of the train. Thereupon plaintiff, with the lantern and prod-pole, crept under the cars to the other side, and by holding up his lantern his men could discover whether any of the cattle were "down." Before they had completed the examination, and before the expiration of fifteen minutes after the train stopped, it was started. The plaintiff heard no signal for starting, though he says that he heard bells of other trains, as he supposed. One of his own witnesses testified positively that a signal for starting was given by ringing the bell of the engine. The plaintiff, noticing the increasing speed of the train, concluded that when the "caboose" would reach him the speed would be too great to allow him to get upon it, and, in this belief, he attempted to climb upon a passing freight car. He caught with his left hand the "hand holds" and,

in his own language, made "a pitch forward to get my foot into the stirrup of the car; and when my foot came down my right foot went into a hole." He then proceeds to relate his struggle to climb upon the car, all the time holding the prod-pole and lantern in his right hand. Finding it impossible to gain the top of the car, he attempted to throw himself away from the car, when he fell, the wheels of the car ran over his left arm, rendering immediate amputation necessary. The car was on a bridge over a street when he attempted to climb upon it, and the hole in which he stepped was caused by a broken plank in the floor. Plaintiff was not aware that he was upon the bridge, and did not know of the hole when he attempted to mount the car. He was impelled to the attempt to do so by the fear that he could not get upon the "caboose" when it should pass him, and he would be left by the train. The rate of speed of the train is not shown with clearness. Plaintiff declares that "it was going pretty lively," and that he feared the increased speed would be such that he could not get upon the "caboose." The train had about thirty-two cars. It was not shown how far he was from the "caboose," but he states that he could see its lights.

II. The negligence of the defendant complained of is the suffering the broken plank in the bridge. It may, for the purposes of the case, be admitted that this constituted negligence. But we think the conceded facts of the case show that plaintiff was guilty of such contributory negligence as to defeat his right of recovery. There can be no dispute as to the facts consitituting contributory negligence. And, in our opinion, no reasonable inference can be drawn from them other than that plaintiff's negligence caused his own injury. In that case, the question of his negligence is one of law, to be determined by the courts. See 2 Thompson on Negligence, p. 1178, § 25; p. 1236, § 11, and cases cited.

A very few remarks will make plain our position that no other inference can be drawn from the facts than that plaintiff's own negligence contributed to the injury. The train was

going at "a pretty lively" speed. Plaintiff was encumbered by his lantern and prod-pole. As a passenger upon the train he had no right to go upon the freight cars, the "caboose" being provided for his accommodation. We think no ordinarily prudent man would attempt to do what plaintiff failed in doing, viz.; to mount the freight car while it was going at the speed indicated, and at the same time holding in his hand a lantern and prod pole. See *Bon v. The Railway Passenger Assurance Co.*, 56 Iowa, 664: *Doggett v. The Illinois Central Railway Co.*, 34 Iowa, 284.

We are not prepared to say that, under all circumstances, it would be negligence to go upon a moving train. The rate of speed might be so slow, the circumstances might be so favorable and the person attempting it might be so unencumbered in his movements, that prudence would not forbid an attempt to enter a passenger train when in motion. In this case, all of these circumstances are wanting. The plaintiff in the night time, with one hand filled with a lantern and prod-pole, attempted to climb upon the top of a freight car when its speed was so great and increasing that but a brief delay would render it unsafe to attempt to enter the caboose. In our opinion he was guilty of negligence amounting to recklessness, if not to madness.

Our conclusions are demanded in the interest of human life. No encouragement or countenance should be given by the law to such reckless disregard of life and personal safety as was exhibited by plaintiff. The adjudged cases will be found to give but little light upon the question involving the negligence of plaintiff. Each case is based upon its own peculiar facts. Those referred to by counsel need not, therefore, be cited. In our opinion, the district court should have sustained defendant's motion to direct a verdict in its favor.

REVERSED.