John McLeod, Appellant, v. The Chicago & North-western Railway Co., and The Sioux City Traction Company, Appellees.

**Railroads:** NEGLIGENCE: CROSSING ACCIDENT. Where it appears that there was nothing to obstruct the view of an approaching train so that had plaintiff looked in the direction of the train he would have discovered it in time to avoid the accident, his testimony that he did look and did not discover it, raises no issue upon which he would be entitled to demand a verdict.

**Contributory negligence.** Where one approaches a crossing in plain view of a moving engine with which he is liable to be struck in crossing, and without looking to discover the danger goes forward and is injured, he is guilty of contributory negligence as a matter of law.

**Evidence:** CONTRIBUTORY NEGLIGENCE. In an action for injuries received by a street car motorman in colliding with defendant's engine at a crossing, the evidence is reviewed and held to show such contributory negligence as to preclude recovery.

**Street railways:** EMPLOYER'S LIABILITY. An employe of a street railway company is not one for whose benefit the employer's liability statute (Code, section 2071) was enacted, even though by the amendment of the Twenty-ninth General Assembly interurban railways were brought within its provisions, but as to him, while operating a street railway within the limits of the city, the rule exempting the employer from liability for the negligence of a fellow servant obtains.

**Evidence:** NEGLIGENCE OF FELLOW SERVANT: VICE PRINCIPAL. In an action for injuries to a motoneer, the evidence is reviewed and held that there was neither a common law liability of the employer for the negligence of a fellow servant, nor was he shown to have been a vice principal.

*Appeal from Woodbury District Court.*— Hon. John F. Oliver, Judge.

Thursday, October 20, 1904.

The opinion states the case.— *Affirmed.*

*F. E. Gill* and *Hubbard & Burgess,* for appellant.

*James C. Davis* and *T. F. Bevington,* for appellee, *Chicago & Northwestern Railway Co.*

*J. S. Lawrence,* for appellee, *Sioux City Traction Co.*

Weaver, J.— The Chicago & Northwestern Railway Company operate a line of railway having a terminal in the city of Sioux City, Iowa. The Sioux City Traction Company operates an electric street car system in the same city. In connection with and as a part of the same general system, the traction company owns a trolley line extending from the central station in said city across a bridge which spans the Missouri river to a point in the state of Nebraska. One of the street railway tracks crosses the track of the Chicago & Northwestern Railway within the corporate limits of Sioux City, at the intersection of Dace and La-fayette streets. On January 23, 1903, the plaintiff was a motoneer in the employ of the traction company, and was moving a car eastward on Dace street in the direction of the crossing. At a point about twenty feet from the intersection of the two tracks, plaintiff stopped the car; and the conductor, as was his duty, went ahead to the opposite side of the track to ascertain whether the crossing could be made in safety. It is the claim of plaintiff that the conductor beckoned him forward, and in response to the signal he set the car in motion. Just at that time an engine, moving from the south, came in collision with the car, and plaintiff was injured. It is alleged that the railway company is chargeable with negligence in respect to the collision, because the engine gave no signal or warning of its approach, and was being operated at a high and dangerous rate of speed, in violation of the ordinances of the city. Negligence is also imputed to the traction company because of the alleged carelessness of the conductor of the car in signaling the plaintiff across the track. Both defendants took issue upon the allegations of the petition, and the cause was tried

to a jury. At the close of the testimony the defendants severally moved for a directed verdict in their favor. Both motions were sustained, and upon the verdict thus returned there was judgment against plaintiff for costs, and he appeals.

I. We will first consider the case made against the railway company. Without stopping to review the testimony, we will say there was evidence as to the rate of speed 1. NEGLIGENCE: at which the engine was moving, and of the crossing accident. failure of the enginemen to give signal or warning of their approach, which would have justified the jury in finding the railway company negligent. We have, then, next to inquire whether plaintiff shows himself free from contributory negligence. Under the law of this State the burden is upon him to show that he exercised reasonable care for his own safety, and, if he failed to make such showing, or if the facts developed conclusively and affirmatively demonstrate that he did not exercise such care, and that such omission contributed to bring about the collision, then he cannot recover, and the trial court was right in its ruling. It is the claim of the plaintiff that he stopped his car within twenty feet of the crossing, and that as he stopped he looked to the south, and saw no engine approaching. He then waited for the conductor to reach the other side of the track and signal him across, and, having received the signal to go forward, he at once undertook to obey, and was struck as before stated. Under many circumstances this testimony might well be taken as sufficient to carry the question of contributory negligence to the jury; but it has often been held that, where the situation and surroundings are without controversy shown to be such that, had the person looked in the direction of an approaching train, he could not have failed to see it, his testimony that he did look and did not discover it raises no issue upon which a party is entitled to demand a verdict. *Artz v. R. R.*, 34 Iowa, 153.

It is equally well settled, and the rule is too familiar

to justify the citation of authorities, that one who approaches the crossing of a railway track upon which there is coming in plain sight a train or engine which is liable to reach the crossing before he can safely pass to the other side, and without looking to discover his danger and without any intervening circumstance which may reasonably operate to direct or distract his attention he goes forward and is injured, he is held guilty of contributory negligence as a matter of law.

2. Contributory Negligence.

The undisputed facts in the record before us bring the case within the rules just cited. Stating the situation as given by the plaintiff himself, the motor of his car was in good order, and at the rate at which the car was moving when struck he could bring it to a stop within a distance of four or five feet. He was perfectly familiar with the situation, having operated a car over the crossing twenty or more times every day for several years. Approaching the crossing from the west, he had the car under complete control, and brought it to a full stop. The railway track which he was about to cross extended in a straight line to the south at least one thousand feet, and from the point where the car was stopped the view to that distance was open and unobstructed, unless it be that certain telegraph or telephone poles created a partial screen in that direction. He did look just as he brought the car to a stop, and says he did not see the engine approaching. If it be true that the poles interfered with his view at that point, it is also true that passing the range of the poles, and before reaching the crossing, there was a clear space in which, had he looked, he must have discovered his danger in time to avoid it.

3. Evidence: contributory negligence.

He says: While I was standing still with the car I never looked to the north or south for an approaching train. I was watching the conductor. I listened, and heard no car. Then I started my car, and looked north, and saw no engine coming. When I looked south, I was so close to the track that

I couldn't stop the car until I came in collision with the locomotive. *If I had looked south, I could have seen that engine coming three blocks.* I couldn't look three ways. I was watching the conductor. I couldn't look south or north and watch the conductor. I would have seen the engine if I had looked south just before I started, if these posts wouldn't have obstructed my view. I recognize that as a photograph of the place of the accident. I recognize those as the trees mentioned as being south of the track, and those as the posts I have spoken of. I think it would obstruct the view. The three posts shown in the photograph are about twenty feet from the track. *After you get past the trees and posts you have an unobstructed view,* looking south beyond the Floyd Bridge, after you get here (indicating point in photograph). Before you reach the telephone poles, you have an unobstructed view south of the Northwestern track. After you leave the telephone poles, you have another unobstructed view. You can see down to the curve. * * * I could have turned my head to the north, and then to the south, before I put on the power, but I didn't. I started the car when he signaled.

On cross-examination he also says that one of the rules of his employment required him to bring his car to a full stop, and look and listen, before moving his car over a railway crossing, and adds: " The rule was in force. It was not exactly my understanding that all I had to do was to rely on the conductor, and that I need not look or listen at all. I knew that I had to look and listen."

The conductor of the car, testifying as a witness for the plaintiff, says that as the car was approaching the crossing he stood upon the front platform, which was the motorman's place of duty, and while still one hundred and fifty feet from the intersection of the tracks he saw the engine coming up from the south about one thousand feet away — a distance of more than two blocks. He says: " There wasn't anything to obstruct my view of the approaching engine when I was about one hundred and fifty feet from the crossing. McLeod, from where he stood, had the same view of the engine that I had." At a distance about twenty-five

feet from the crossing the conductor jumped to the ground and ran ahead of car across the railway track, and as he went " saw the engine coming perhaps four hundred or five hundred feet away." He denies having signaled plaintiff to cross, but in this respect there is a conflict in the testimony, and for the purposes of this appeal we may accept plaintiff's statement as correct. The photographs exhibited in evidence may be, as counsel claim, more or less misleading in some matters of detail, exaggerating some features and minimizing or obscuring others, but they are not without material value in illustrating and explaining the stories told by witnesses who are familiar with the place of the accident and its physical surroundings.

Taking the case as a whole, it is shown without controversy that, if plaintiff did look to the south, as he says he did, before stopping his car — that is, if he looked along the railway track to discover whether the crossing was endangered by a moving train — it was physically impossible that he should not have discovered the engine with which he collided. Furthermore, he knew it was his duty not to rely wholly on the signal of the conductor, but for his own protection, and for the protection of the passengers in his car, he was bound not only by an express rule of his employment, but by the ordinary obligation of reasonable care, to look as well as listen, and assure himself that the crossing could be safely made. This he admits he did not do. His only excuse for this failure is that he could not look in two or three different directions at the same time. But this explanation does not explain. From the spot where he last started the car to place of danger was twenty feet. He says he could have stopped in a distance of four or five feet. To look to the north and to the south and to the conductor across the track was the work of but a single sweeping glance, requiring only the small fraction of a second, but plaintiff tells us that at no instant after putting his car in motion did he look south at all until it was too late to avoid the result

of his recklessness. He claims to have received the conductor's signal to cross before he started his car from the place where it was standing twenty feet west of this track. If this was so, then there was no occasion whatever for him to keep on "watching the conductor," as he says he was doing, as he went upon the crossing. Plaintiff having conceded that he was not required to rely solely upon the conductor's signal, but was expected to assure himself of the safety of the crossing before venturing upon it; that, if he had looked, he could have discovered his danger, and avoided the collision; that he did not look, and that the only reason for the failure was the attention he was giving to a signal, which he was not expected to obey until he had himself ascertained that the way was clear — we think it must be said as a matter of law that he is chargeable with contributory negligence, and cannot recover. If he had looked, and had in fact seen the engine approaching at such distance that, if moving at a lawful rate of speed, it could not have reached the crossing in time to collide with his car, and, without knowing that it was moving at excessive speed, he undertook to cross the track, and was run down and injured, it may well be that the case should have gone to the jury under the doctrine of *Moore v. R. R. Co.,* 102 Iowa, 595, and other cases of that nature cited by the appellant. But he does not claim to have been thus deceived or misled. He did not look at all after he stopped the car for the express purpose of looking and ascertaining whether he might proceed in safety, and thus contributed very materially to the disaster.

II. Assuming the truth of the plaintiff's contention as to the facts, can the traction company be held liable for his injury? If such liability is held to exist, it must be upon

4. Street Railways: employer's liability.

the theory that the company is chargeable with the negligence of the conductor in signaling the plaintiff to take his car over the crossing. The rule which exempts an employer from liability to an

employe for injury occasioned to the latter by the negligence
of a fellow servant is maintained by the courts of this State,
except as the same has been abrogated by statute for the
benefit of certain employes of railway corporations.. Code,
section 2071. It follows, then, that to entitle plaintiff to
recover in this case it is necessary for us to find that he
comes within the description of persons for whose benefit
the statute was enacted, or find that the conductor was, as
to him, the vice principal of their common employer. The
employer's liability act, to which reference is here made,
applies in terms to " every corporation operating a railway."
This phrase, in its broadest and most general sense, is suffi-
cient to include a street railway corporation, but in ordinary
parlance the word " railway " or " railroad," when not
qualified by the word " street," or other expression of sim-
ilar import, has special reference to what are sometimes de-
nominated " commercial railroads." By this is meant those
larger, more expensive, and more permanent lines or systems
extending from town to town and city to city, accommodating
a heavier and more miscellaneous traffic, and requiring larger
forces of employes, who are exposed to greater risks than is
the case with street car lines and systems. It is in this
more restricted sense that we feel compelled to interpret
Code, section 2071. The distinction we have here .drawn
was recognized and upheld by us in *Fidelity Loan & Trust
Co. v. Douglas,* 104 Iowa, 532, and *Cedar Rapids & M. C.
Ry. v. Cedar Rapids,* 106 Iowa, 476. In the former case
we had occasion to construe Code 1873, section 1309, which
provided that a judgment against " any ' railway corpora-
tion " for injury to persons or property should be a lien on
its property prior and superior to liens of mortgages and
trust deeds. ·In the latter case the controversy was upon
the construction of Code 1873, section 1317, providing for
the assessment by the executive council of " all the property
of each railway corporation in this State." The language
in each instance was as broad and general as that employed

in Code, section 2071, and in each instance we held that street railways and street railway corporations were not included within the meaning of the statute. This distinction was foreshadowed in *Sears v. Ry. Co.*, 65 Iowa, 742.

It is argued, however, that the distinction, if it ever existed, has been abrogated by the enactment of chapter 81, page 49, Acts Twenty-Ninth General Assembly, Code Supp. page 212. It is said that, as the traction company had an interurban line between Sioux City, Iowa, and South Sioux City, Neb., its entire system is to be regarded interurban, and that under the operation of the statute just referred to it is a "railway" in the strict sense of the word, and subject to all the liabilities which the laws of the State impose upon railways in general. Even if we concede, though we do not decide, that the extension of one of its lines or branches beyond the corporate limits of the city to another city would make the entire system in some sense "interurban," a reading of the statute demonstrates that it cannot have the effect which counsel claims for it in bringing the present case within the terms of Code, section 2071. It is true that section 2, page 50, of the chapter, provides generally that the words "railway" and "railway corporation," "railroad" and "railroad corporation," wherever used in our statutes, shall apply to and include all interurban railways and all companies and corporations "constructing, owning, or operating interurban street railways"; but the next section further provides that "any interurban railway shall within the corporate limits of any city or town, upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages and freight as it may carry in its passenger or combination cars only, be deemed a street railway and subject to the laws governing streets railways." This statute clearly recognizes that the legislation theretofore enacted did not generally have application to street railways, and it was sought to extend such legislation over interurban lines, but to reserve from the operation of that enact-

ment so much of the interurban lines as occupy city streets. Within such streets they are to be treated and considered in law as street railways. We therefore hold that chapter 81, page 49, Acts Twenty-Ninth General Assembly, has not the effect to bring the traction company within the operation of Code, section 2071.

This being the case, we have only to ask whether there was anything in the plaintiff's case which, as a matter of common law, would have justified the jury in finding the defendant liable for the negligence of the conductor of its street car. It is alleged in the petition that he was incompetent for the position in which he was placed by the company, but there is no evidence whatever in support of the charge. Neither is there any evidence from which the court or jury could properly infer that he was a vice principal of the master. The extent of his authority over the movement of the car or the work of the plaintiff is not shown. It is shown, however, that plaintiff was not required to rely upon the signal of the conductor in crossing a railway track, but was under instruction from the master to himself stop his car and look and listen before attempting a crossing. With this record it needs no argument to demonstrate that the conductor was not shown to be a vice principal of the employer.

*5. Evidence: negligence of fellow servant: vice principal.*

The ruling of the trial court was correct, and the judgment is *affirmed.*