STEPHEN OAKS, Administrator, Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY Co., Appellee.

NEGLIGENCE: Actions for Injury—Death at "Blind Siding"—Evi-
1  dence—Sufficiency. Evidence reviewed, and *held* insufficient to show negligence on the part of the employees of a passing train in hitting and killing deceased, a stockman, while walking between a main and a side track at a blind siding.

RAILROADS: Negligence—Signals at Remote Passing Tracks. The
2  recognized rules governing the duty of an engineer in the matter of the giving of signals in approaching public crossings and public stations, do not apply in approaching a strictly passing track fenced on both sides and located five miles from any town and remote from any public highway or crossing.

CARRIERS: Carriage of Passengers—Duty of Passengers—Rules—
3  Negligence. A rule providing that a shipper shall ride in the caboose is reasonable, and it is the duty of the shipper to obey such rule.

NEGLIGENCE: Contributory Negligence—Violation of Rule by
4  Shipper—Place of Danger. One who violates a rule of a railway company requiring him to ride in the caboose, places himself in a position so close to a passing track that he is liable to be hit by a passing train, which he had reason to believe would pass, and is hit and killed, and could have heard and seen the approaching train had he looked or listened, is guilty of contributory negligence as a matter of law.

NEGLIGENCE: Contributory Negligence—Instinct of Self-Preserva-
5  tion—Presumption—Nonapplicability of Rule. The presumption of due care, ordinarily indulged in the absence of eyewitnesses, does not prevail when the physical facts show that the deceased could not have exercised such care.

NEGLIGENCE: Contributory Negligence—Last Clear Chance—Evi-
6  dence. "Last clear chance" doctrine held inapplicable under the evidence, deceased, at the time of his death, being between a main and a passing track at a point on the road some five miles from any town, and the view of the engineer of a swiftly approaching train which hit deceased being obstructed by an intervening train.

*Appeal from Cass District Court.*—E. B. WOODRUFF, Judge.

SATURDAY, MARCH 11, 1916.

THIS is an action at law to recover damages for death alleged to have been caused by the negligence of the defendant. Trial to a jury. At the conclusion of plaintiff's testimony, the court sustained a motion of defendant, directing the jury to return a verdict for it. The opinion states the case. Plaintiff appeals.—*Affirmed.*

*S. B. Gwin* and *H. M. Boorman,* for appellant.

*F. W. Sargent, R. J. Bannister* and *B. A. Goodspeed,* for appellee.

PRESTON, J.—The propositions in the case are, first, as to whether there was any negligence shown on the part of the defendant in the operation of the train; second, whether, under the undisputed evidence, and as a matter of law, deceased was guilty of contributory negligence; and, third, whether the doctrine of the last clear chance applies.

1. NEGLIGENCE: actions for injury: death at "blind siding:" evidence: sufficiency.

Was the evidence sufficient to take the case to the jury? The conductor, Christensen, and the engineer, Van Lew, were called as witnesses for the plaintiff, and the case depends largely upon their testimony. As to the description of the track, the switches, the curve, distances, etc., one Gaber gave testimony and produced a plat, but his testimony showed that the plat was not correct. He afterwards made some corrections and then stated that it was correct, and the plat was admitted in evidence. But, take his testimony altogether, it is not very satisfactory as to the distances relied upon by the plaintiff, and the physical facts are such that, as to some of the measurements and distances given by this witness, his estimates or measurements cannot be correct. His testimony will be referred to more in detail later in the opinion.

The accident occurred at Chautauqua, known as a blind siding, about 5½ miles east of Council Bluffs. There is no station house there, no tickets are sold there, no passengers taken on or let off the trains, no freight is put off or taken on. There are no houses for a quarter of a mile; nobody lives there. The right of way is fenced on either side. Trains take the siding for no other purpose than to meet another train or to let another train go by. The freight train on which the deceased was riding took the siding that day for the purpose of letting passenger train No. 5, consisting of an engine and 10 cars, going west, pass. The siding was 2,850 feet long. There was a sharp curve at the east end of it. The witness who testified to the measurements said that he thought it was 900 feet around this curve. Elsewhere he testified that he had marked the west end of the curve with a flag and that it was 1,800 feet from the east end of the curve to this flag and 1,050 feet from the flag to the west switch. The testimony of this witness will be referred to a little more in detail later. The conductor testified that he found the body of deceased after the accident, lying west of the curve five or six car lengths, or about 200 feet; that there were 13 cars and the caboose west of him, and 23 cars and the engine east; that the cars east were in the curve. There is no evidence that deceased was seen by anybody before he was struck. Neither the engineer of the passenger train nor the conductor of the freight train saw him. There is no evidence as to just where he was when he was struck; but it is conceded by plaintiff in argument that he was not on the track. There is no evidence of what struck him. His skull was crushed just back of the right ear, and there was an injury to his forehead. It is assumed that some part of the engine struck him, and doubtless that would be the proper inference from all the circumstances.

Deceased evidently rode from Council Bluffs to the siding in question in the stock car, which was near the front end of the train. He was seen in this car just before the train

started from Council Bluffs. The inference is that, at the time he was struck, he was making his way from this car back to the caboose. The passing track was on the south, then the main line track, and then a stub track. The curve of the track starts from the southeast and swings around into the north and back to the southwest. The east end of the curve is east of the east switch of the passing track. The freight train pulled up as close as it could to the east end of this siding. It is claimed that, as the passenger train came around the curve, the engineer had practically no view at the point where deceased is supposed to have been, because the engineer was on the right-hand side of the engine and the curve was to the left, and the boiler of the engine extends out in front of the cab some 30 or 35 feet. There was a block signal at the west end of the siding, at which it was the engineer's duty to look as soon as he could see it after coming around the curve. The engineer on the passenger train was one of the oldest and most experienced men on the road. He had been running an engine over this road for 35 years. He says that he had never seen anybody around this siding before except the section men, and they were always out of the way when there was a train to meet. The fireman had other duties, but it was his duty to look forward when not otherwise engaged, and there is no evidence that he was looking out at the time of the accident. If he had been looking out, there would have been more or less obstruction of his view around this curve past the freight train on the concave side of the curve. There is room to clear a man between the trains on the passing and main tracks. The engineer knew this, for he says that he saw it many times, and in other places, and that the distance is standard and there is very little difference. As the passenger approached, the engineer could see only that there was a train there. He says he did not know that stockmen or emigrants were upon the train. He never had seen any at this siding. He had not seen stockmen at that place along the trains looking after their stock. This siding

is but a few miles from Council Bluffs. It does not appear that there was any occasion for deceased's being in the stock car.

One witness testifies that, if the engine is working right, under some conditions the passenger train would approach without making much noise, but his testimony is weakened somewhat on cross-examination. The passenger train in question was running 47 miles an hour. There is other testimony of plaintiff's that there is a rumbling and jar to a fast moving train, and that this is perceptible for a considerable distance. Some of the plaintiff's witnesses say that you could hear the noise of this train a quarter of a mile ahead of the engine. There is more noise made by a train when it is passing another train. The passenger engineer sounded a long blast of the whistle within a quarter of a mile of the east end of this siding. The other train was not puffing nor making any noise nor ringing the bell. It was a clear, sunshiny afternoon. There was nothing to prevent decedent from hearing the train if he had listened. His opportunity for seeing in the direction of the approaching train, if he had looked, was better than that of the engineer, looking in the other direction, to see deceased.

Deceased was shipping the car from Faulkton, South Dakota, to Adair, Iowa. In the car were seven horses and other property. The contract, among other things, provided:

"That the second party (deceased) shall assume all risk and expense of feeding, watering, bedding and otherwise caring for the live stock covered by this contract while in cars, yards, pens or elsewhere, and shall load and unload the same at his own expense and risk. . . . The person or persons in charge of live stock covered by this contract shall remain seated in the caboose car attached to the train while the same is in motion, and whenever such person or persons shall leave the caboose car, or pass over or along the cars or track, they shall do so at their own risk of personal injury from every cause whatever, and that the said first

party shall not be required to stop or start its trains or caboose cars from depots or platforms, or to furnish lights for the accommodation or safety of such persons."

As before stated, the conductor saw deceased in the stock car as the train was leaving Council Bluffs, and did not request him to ride in the caboose. It is suggested that possibly the company waived the rule or provision of the contract by not requesting deceased to ride in the caboose instead of in the stock car, but there is no argument upon the point.

We shall now refer briefly to the testimony of the witness Gaber, who made the measurements and the plat, and state some further circumstances not already stated. He says that it is 350 feet from the east switch to the apex of the curve. He says that the track is straight from the west end of the curve to the west end of the switch. On cross-examination, he said:

"I am not a civil engineer; never computed a curve to determine what a tangent is. The measurements were made with a steel seventy-foot tape. Plaintiff and Mr. Gwin, his attorney, were with me. Mr. Gwin assisted in making the measurements. I work in Mr. Gwin's office. He sighted along the track and in that way determined where the curve commences. I don't know just exactly where the curve commences. The east end of the curve is about ninety-six feet east of the block signal. I did not have a compass or a level. I just determined the point of the curve with my eye. I think the flag was set about at the west end of the curve. I don't know where the curve does begin on the east. I did not take any observation to see how far a man could see around this curve when there was a train on the passing track. I never observed from a cab to see what view an engineer or fireman had around a train on this passing track."

As stated, it is not entirely clear from the testimony as to the distances. The only point about it is that plaintiff claims that the train could have been stopped within about 400 feet, and the thought is that the engineer could or should

have seen deceased where he was for a greater distance than that; and if that were all there was to it we should, perhaps, consider the evidence at this point in the light most favorable to appellant. But there are other circumstances about which there is no dispute which show, we think, that the engineer could not see deceased as far as plaintiff contends. In the view that we take of the case, the supposed discrepancy in the testimony as to the distances and the exact location or condition of the curve is not controlling.

The conductor testified, in addition to circumstances already set out, that, when they pulled in on the siding, they waited there only eight minutes when the passenger came along; that he said nothing to Mr. Oaks about meeting a train at this place. He says further:

"I don't remember just how far it is between the passing tracks, but plenty of room for a man to walk between the trains; we did it right along; it is customary. I ran back and when I got to the man he was dead. The ground along the main line track is level. It is not usual to see stockmen along the trains at this siding. When I went to deceased, he had his cap down pretty well. It was a Scotch cap, pulled down pretty well over his head."

The engineer testified, in addition to the facts already stated, that he saw the train on the siding; only saw the engine.

"Our orders would let us go right on through there. Gave no other signal when approaching the siding except the long whistle. The wind was blowing from the northwest. We were running from 45 to 47 miles an hour, which was customary going to sound the whistle there; but it is not usual and customary to sound the bell going past this siding. There are no road crossings there, and the closest crossing is about a quarter of a mile west of Chautauqua. If there is no train at the siding, you can see clear through there; no hills or trees or obstructions. We had a clear track through there, nothing to stop for. I did not have any reason to anticipate or believe anybody would be on the track there in

front of my train at that time and place, because I had never seen anybody there before.''

The witness who testified that, in his opinion, a train could be stopped within about 400 feet, was a locomotive engineer, but was not familiar with the operation of a train of the length and character of the passenger train in question and equipped as it was. But here, also, we should consider the evidence in the light most favorable to appellant.

1. Without again setting out the testimony, it seems to us that it is very doubtful, to say the least, whether any of the grounds alleged as negligence have been established, or that there are facts from which a jury could fairly infer negligence.

2. RAILROADS: negligence: signals at remote passing tracks.

In regard to giving additional signals, the appellant's cases are not in point, because they are dissimilar in their facts. No cases are cited of an accident occurring under the conditions shown here. The cases cited are where a train is passing a public crossing or approaching and passing stations and the like. There are duties devolving upon the engineer of a railway train in passing public crossings where people have the right to cross the track. There are also duties devolving upon him in approaching and passing stations and station houses where people can be expected to congregate; at such places trains must be operated with reference to such facts. But here the siding was in the country, about five miles from any town, two or three miles distant in one direction from any highway, and about half a mile in the other; fenced on both sides; no place to take on stock, or unload it, or water it; no place to take on or unload freight; no place for passengers to get on or off; no station house; simply a passing track. While the view of the siding was clear through there, but for the freight train on the siding, the engineer says that he did not see deceased; and, because of the freight train on the siding and the obstruction of the front end of the engine on the curve, we are satisfied that the engineer could not have seen

him. The engineer did give a whistle signal which could have been heard by deceased, had he been listening. His orders gave him a clear track.

In view of our holding later in the opinion that deceased was guilty of contributory negligence, we deem it unnecessary to discuss the question of the alleged negligence in the first place, of defendant. It will be referred to briefly in connection with the claim that the doctrine of the last clear chance applies.

2. The defendant company had the right to make reasonable rules and regulations for the conduct of its business. and it was the duty of deceased to comply therewith. We think that the rule or provision of the contract in regard to deceased's riding in the caboose was reasonable. Defendant's employees had the right to operate its trains on the assumption that decedent would so comply with the lawful rules that he had notice of. Deceased must be held to have had notice of the provisions of his contract. It has been held that, where the provisions of a drover's pass are that the person using it shall ride in a particular part of the train, such person will be deemed guilty of contributory negligence if he violates his contract and occupies a position of greater danger and receives injury by reason of such violation. 4 Elliott on Railroads (2d Ed.), Sec. 1607; *McCorkle v. Chicago, R. I. & P. R. Co.*, 61 Iowa 555.

3. CARRIERS: carriage of passengers: duty of passenger: rules: negligence.

4. NEGLIGENCE: contributory negligence: violation of rule by shipper: place of danger.

It has been held many times that one walking on railroad tracks without looking for trains is guilty of contributory negligence as a matter of law. *Baker v. Chicago, R. I. & P. R. Co.*, 95 Iowa 163; *Bryson v. Chicago, B. & Q. R. Co.*, 89 Iowa 677; *Missouri Pac. R. Co. v. Moseley*, 57 Fed. 921 (6 C. C. A. 641); *Elliott v. Chicago, M. & St. P. R. Co.*, 150 U. S. 245; *Kansas City, etc., R. Co. v. Cook*, 13 C. C. A. 364 (28 L. R. A. 181); *Southern Pac. R. Co. v. Pool*, 160 U. S. 438; *Garlich v. Northern Pac. R. Co.*, 131 Fed. 837 (67 C. C. A. 237);

*Kaiser v. Northern Pac. R. Co.*, 203 Fed. 933 (C. C. A.);
*Stark v. Tabor & N. R. Co.*, 161 Iowa 393; *Hart v. Northern
Pac. R. Co.*, 196 Fed. 180; *Carlin v. Chicago, R. I. & P. R. Co.*,
37 Iowa 316; *McAllister v. Burlington & N. W. R. Co.*, 64
Iowa 395; *Richards v. Chicago, St. P. & K. C. R. Co.*, 81
Iowa 426. One walking upon a railway track should use
his senses to learn whether a train is coming. *Buelow v.
Chicago, St. P. & K. C. R. Co.*, 92 Iowa 240; *Hinken v.
Iowa Cent. R. Co.*, 97 Iowa 603; *Sala v. Chicago, R.
I. & P. R. Co.*, 85 Iowa 678; *Banning v. Chicago, R. I. & P. R.
Co.*, 89 Iowa 74; *McLeod v. Chicago & N. W. R. Co.*, 125 Iowa
270; *Thompson v. Chicago, G. W. R. Co.*, 162 Iowa 468. These
cases are not all precisely in point, because it is not claimed in
this case that deceased was walking on the track. The evi-
dence does not show that he was on the track, and it is
insisted in argument by appellant that he was not. But the
result is the same. He was walking so close that the engine
struck him. It is conceded in argument by appellant that,
had deceased been two or three inches farther away from the
passing passenger engine, he would not have been struck.

Under the evidence in this case, if deceased were alive
and had testified that he looked and listened for the passenger
train, his testimony would not raise a conflict, because it is
clear that he could have seen and heard, had he been paying
attention. *Bloomfield v. Burlington & Western R. Co.*, 74
Iowa 607; *Reeves v. Dubuque & S. C. R. Co.*, 92 Iowa 32;
*Powers v. Iowa Cent. R. Co.*, 157 Iowa 347; *Payne v. Chicago
& N. W. R. Co.*, 108 Iowa 188; *McLeod v. Chicago & N. W. R.
Co.*, 125 Iowa 270; *Artz v. Chicago, R. I. & P. R. Co.*, 34 Iowa
153.

The difference between this case and cases where it was
held that there was a jury question is well illustrated by
*Christensen v. Illinois Cent. R. Co.*, 140 Iowa 345, upon which
appellant relies. There the injured man saw the engine stand-
ing still; there the accident occurred in town, in a yard, where

Christensen had the right to expect that the trains would be operated with care. He knew, also, that the men operating the train knew that he was on the track, and had a right to believe that they would be on the lookout for him. And the court said:

"One who is on or near a railroad track for a proper purpose cannot be required, as a matter of law, to be constantly looking; that is, to be looking at every instant of time for the approach of engines and cars. Having advised himself by proper observation of his surroundings and the sources of probable danger, he may proceed with the reasonable belief that the railroad employees will perform their duty as to his safety."

Here, if he looked, he must have seen the train rapidly approaching him. The freight train upon which deceased had been riding had pulled in on the siding for the purpose of allowing a train to pass. While it is not shown that deceased knew this, still there is nothing from the appearances to show that his train was on the siding for any other purpose. The main line track close to his train was notice to him that trains were likely to pass. He was a young man in the full possession of his senses. It was in the middle of a sunshiny, bright, winter afternoon. There was room enough for him to walk between the passenger track and the track upon which the freight train was standing, had he exercised care.

The case of *Hart v. Northern Pac. R. Co., supra,* is closely in point. That was a drover's case, where decedent, traveling on a drover's pass, accompanying his cattle, at night walked some distance in the space between the main line and the side track of a railroad, going from the passenger station to the yard office, and where he had been warned that a passenger train was due to pass at any time; and, although there was a safe way in plain view on the opposite side of the main line, he continued to walk in the space between the main line and the side track, with his back to the approaching

train, and was struck and killed; and it was held that he was negligent as a matter of law.

In the case of *Garlich v. Northern Pac. R. Co., supra,* a man was walking close to a track in the space between the railroad tracks and the river .bank, which was used as a pathway. The plaintiff was walking at a safe distance from the track until just before he was struck, when he made a side-step towards the track; and it was held that he was guilty of contributory negligence.

In *Kaiser v. Northern P. R. Co., supra,* the facts are somewhat similar to those in the case at bar. As plaintiff walked through a railroad yard to take a train, he observed an engine some 200 or 300 feet in the rear, approaching at a speed of six or eight miles an hour. They left the track along which they were walking, crossed over two or three others, and continued their course opposite one of the latter tracks. The engine also switched over to that track, and plaintiff was struck and injured by it. He had not looked again. It was a clear morning, and there were no obstructions to the view. It was there held that plaintiff was negligent as a matter of law and could not recover.

It is thought by appellant that the rule as to the presumption arising from the instinct of self-preservation applies. But there is a limitation to the rule that, where the physical facts show that care could not have been exercised, the presumption does not obtain. On this question, this court said, in the *Baker* case, *supra:*

5. NEGLIGENCE: contributory negligence: instinct of self-preservation: presumption: nonapplicability of rule.

"Importance is attached to the fact that the natural instincts for self-preservation, of which the jury could take notice, would have led to the exercise of care on the part of Mitchell. It was proper for the jury to consider that fact, and, as we have said, direct or positive evidence is not required to show an absence of negligence. If it may be inferred from all the evidence in the

case, it is sufficient.   The rule in this respect is noticed in *Greenleaf v. Railroad Co.*, 29 Iowa 14; *Way v. Railroad Co.*, 40 Iowa 345; *Burns v. Railroad Co.*, 69 Iowa 456; and *Hopkinson v. Knapp & Spaulding Co.*, 92 Iowa 328.   We are not disposed to deny to plaintiff the benefit of the rule as repeatedly announced, and we affirm the repeated application of it.   In each of these cases the injury happened when the person was engaged in the line of employment, and in some, if not all of them, his conduct is traced so closely to the accident that from it, aided by a presumption that arises from a natural disposition to avoid injury, the fact of diligence could well be found.   That is not the situation of this case. All that can be assumed in this case is that Mitchell was doing what he was when Underwood saw him, and that is, walking homeward.   It will not do to say that one can go upon a railway track without having a duty there, and if, while walking, he is struck by a train, the jury may assume from the instincts of self-preservation alone that he was diligent.''

The same duty devolved upon deceased in the instant case, in walking so close to the track that he would be struck by an engine, as though he had been walking on the track.

Without pursuing the subject further, we think it is clear that in the instant case deceased was guilty of contributory negligence.

3.   As to the doctrine of last clear chance, the evidence has been heretofore set out at some length, and we shall attempt to cover this point without repeating the testimony. Enough has been said, perhaps, to indicate that in our opinion there was not sufficient time between the time, even as claimed by plaintiff, when the engineer should have seen deceased, to stop the train or to give further signals and thus avoid the injury.   There is no dispute in the testimony as to the place where the body of deceased was found.   It was opposite the twenty-third car from the engine; the cars east of it were all on the curve and curved all the

6. Negligence:
contributory
negligence:
last clear
chance:
evidence.

way around until within five or six cars of where he was lying.
Taking into consideration all the circumstances, we think it
is quite clear that the distance was much less than 400 feet
from the place where deceased must have been to the point
where he would first come within the view of the engineer.
There is no showing that deceased did not suddenly lurch in
front of the train, or stumble and fall in his path, or perhaps
became confused after he saw that the train was upon him.
It is nowhere shown in the record where deceased, in walking
along the track, came within two or three inches of the
train, or close enough to be struck by it.  The theory that
the engineer could have seen him in time to stop
the train or give further signals, and that he was negligent in
not seeing him, assumes that the decedent was in the same
position—that is, within two or three inches of the track—
from the time appellant claims that deceased could have been
seen by the engineer.  There is no such evidence.  Had de-
ceased placed himself only two or three inches closer to the
train just before he was struck, there could be no negligence
at all on the part of the railway company in the first instance,
and in such a case there would be no time for the application
of the doctrine of the last chance.  If the engineer had seen,
or it had been his duty to see, deceased in the space between
the tracks, wide enough for deceased to walk, the engineer
would not be required to stop his train or assume that deceased
would put himself so close to the track and train that the
engine would strike him.

It is thought by appellant that deceased was placed in an
emergency.  But when did the emergency arise?  Clearly,
there was no emergency while deceased was walking between
the tracks, with room enough to walk, or until the passenger
train was upon him.  If there was any emergency, it was
after the train was upon deceased; and there is no claim, and
could not be, that then the engineer could have done anything
to prevent the injury.  A train going 47 miles an hour, as
this train was, would travel 69 feet a second, and it would

take but 13 seconds to travel 836 feet, and 10 seconds to travel 696 feet.

The negligence of the decedent continued right up to the time of the injury. There is no showing that he was in a place of danger for any appreciable length of time before the train struck him. As bearing upon this question, see *Doherty v. Des Moines C. R. Co.*, 137 Iowa 358; *Chabott v. Grand Trunk R. Co.*, (N. H.) 88 Atl. 995.

From what has been said, it is our conclusion that there was no case for the jury; and, had a verdict been returned for plaintiff, it would not be permitted to stand. The judgment of the district court is therefore—*Affirmed*.

EVANS, C. J., DEEMER, WEAVER and SALINGER, JJ., concur.