THE CEDAR RAPIDS & MARION CITY RAILWAY COMPANY, Appellant, v. THE CITY OF CEDAR RAPIDS, et al.

**Street Railway Defined:** TAXATION. A railway was constructed within a city, and also along a highway to a neighboring town, It was operated at first by steam, but afterwards by overhead trolly. It was built and operated under Acts Eighteenth General Assembly, chapter 32, relating expressly to street railways, and authorizing their extension beyond the limits of the city. It carried a

small amount of freight and some express matter between the towns. *Held*, that it was a street railway, and therefore not within Code, 1873, section 1317, providing for the assessment of railways for taxation by the state executive council, but subject to taxation by the local assessors.

**Taxation:** APPEAL TO DISTRICT COURT.  On appeal from the decision of the board of equalization upon an assessment, the district court has jurisdiction to strike from the assessment three lots described by the assessor which were not the property of the corporation assessed and to include two parts of lots which were its property, where the board of equalization failed to act upon the corporation's request to make such correction and such parts of lots were in fact included in the valuation but were by mistake described as the three lots.

SAME.  The board of equalization assessed only that portion of a street railroad which lay within the city.  The company applied to the board to have a misdescription of part of such property corrected, and, on refusal, appealed to the district court.  On the appeal the city sought to have the property outside the city added to the assessment. *Held*, that, as the district court had no power to make an original assessment, it could not make such addition, as that ssue was not raised by the appeal.

To SUPREME COURT.  The supreme court will change an assessment, on appeal, to the amount which the weight of evidence shows most nearly represents the actual value of the property asse ssed.

*Appeal from Linn District Court.*—Hon. WILLIAM G. THOMPSON, Judge.

THURSDAY, OCTOBER 20, 1898.

THIS action is before us on an appeal by the plaintiff from a judgment rendered by the district court on an assessment for taxation made against the plaintiff, for the year 1895.  The issues and facts appear in the opinion.—*Modified and Affirmed.*

*Charles A. Clark* for appellant.

*Warren Harmon* for appellees.

GIVEN, J.—I.  On the first day of January, 1895, the plaintiff owned and was operating a line of railway from a

point within the limits of Cedar Rapids, through the incorporated town of Kenwood, and over certain unincorporated territory, into the incorporated city of Marion. It also owned and operated in connection therewith certain other lines or branches entirely within the limits of the city of Cedar Rapids. These tracks were laid upon and at the grade of the streets of these municipalities, and upon and at the grade of the public highway connecting said cities, over the unincorporated territory, including certain county bridges in said highway. Originally, the line to Marion started at Fifteenth street, in Cedar Rapids, then a boundary street of said city, and was operated by steam engines, under chapter 32, Acts Eighteenth General Assembly, authorizing any street railway company extending its lines beyond the limits of the city to build and operate its road over and along any portion of a highway of a width of one hundred feet or more. On and for some time prior to January, 1895, the tracks within the city of Cedar Rapids and that to Marion were operated together; electricity, applied by the overhead or trolly system, being used as the motive power. One or more of the steam engines formerly used were kept in a motor house near Indian creek, for use in case of deep snows or other emergency rendering their use desirable. Cars were operated on these tracks mainly for the carriage of passengers in the manner practiced by street railways. Plaintiff had four cars which it used in carrying freight between said cities, and it also carried such express matter as was offered at either end of the line or at any point between. The power house and principal car sheds were in Cedar Rapids, and most of the rolling stock was kept therein when not in use, the other cars being kept in Marion for convenience in starting from that end of the line in the mornings. Plaintiff did not have freight nor passenger depots and agents along the line, as commercial railroads have, but took up and discharged passengers and express matter at cross streets and other convenient points. In short, it was operated in all its branches as street railways are operated, except that it

received and carried freight and express matter, to a limited extent, between the two cities. The assessor of the defendant city assessed the plaintiff's property within that city, for the year 1895, at one hundred and fifty thousand dollars, including therein three certain lots that did not belong to the plaintiff, and omitting therefrom parts of two other lots that did belong to the plaintiff, and were used in the operation of the road. On application to the board of equalization, said assessment was reduced to one hundred thousand dollars; and, on appeal to the district court, said three lots were stricken from the assessment, and the parts of said two lots owned by the plaintiff added thereto, and the assessment sustained at one hundred thousand dollars.

II. The Code of 1873 provides as follows: "Section 1317. On the first Monday of March in each year, the executive council shall assess all the property of each railway corporation in this state, excepting lands, lots, and other real estate belonging thereto not used in the operation of any railway." Plaintiff's first contention is that it is a "railway corporation," within the meaning of said section, and subject only to assessment by the executive council. So maintaining, it made returns to, and asked to be assessed by, that body; but the council held, on advice of the attorney general, that it had no power to assess the plaintiff's said property. Plaintiff's counsel state the question thus: "Whether appellant's main line, with or without the lines in the streets of Cedar Rapids, is subject to assessment and valuation by the local authorities, or whether such assessment must be made by the executive council of the state of Iowa." That plaintiff is a "railway corporation," in the broadest signification of that term, may be conceded, but our inquiry is as to the sense in which those words are used in said section 1317. We need not quote the many provisions of the statute with respect to railroads which show that a distinction is recognized between what we may call "commercial railroad corporations" and "street railroad corporations." That there is a distinction

is not questioned, but the dispute is as to which class the plaintiff corporation belongs.   See *Fidelity Loan & Trust Co. v. Douglas,* 104 Iowa, 532.   The development of railways in and about towns and cities has brought the question before the courts whether a particular railway was a street or commercial railway, and the question has always been determined in the light of the statute and the facts of the particular case.   The part of this road extending from Cedar Rapids to Marion was constructed and operated by the plaintiff corporation, under authority of chapter 32, Acts Eighteenth General Assembly.   See *Linn County v. Hewitt,* 55 Iowa, 507.   The act relates expressly to street railways, and authorizes the extension of such railways beyond the limits of the city or town, the location thereof along any portion of a highway which is of a width of one hundred feet or more, and the operation of the railway by either animal or motor power.   The fact that the line between Cedar Rapids and Marion was laid and operated along the highway as authorized by said act, relating exclusively to street railways, seems to us conclusive that the plaintiff is a street railway corporation and not a railway corporation, within the meaning of said section 1317, Code 1873. The fact that plaintiff's street railway was authorized to be extended and laid and operated along a highway, precludes the conclusion that it was intended to be other than a street railway.   Street railways constructed and operated as they are in streets and highways do not exclude other travel therefrom; but not so as to other railways constructed and operated along a street or highway.   Plaintiff's railway is identical in its construction and operation with other street railways, except in that it carries freight and express, to a limited extent, as well as passengers, while most others carry passengers only.   It is unlike other than street railways in almost every other particular.   It is insisted that this alone distinguishes it from street railways, and authorities are cited wherein it is said that a "distinctive and essential feature of a street railway in relation to other railroads is that it is

exclusively for the transportation of passengers, and not for goods." Ordinarily that is true, but in this case we have a street railway corporation organized to operate a street railway in the city of Cedar Rapids, extending its railway beyond the limits of said city, under authority of said chapter 32, Acts Eighteenth General Assembly, expressly relating to street railway companies. Surely the mere fact that plaintiff carries goods and express matter does not take it out of the class of railways where this statute puts it. It is not a "railway corporation," as contemplated in said section 1317, but a street railway, and is therefore subject to assessment by the local assessors.

III. We have seen that the district court struck from the assessment the three lots described by the assesor that did not belong to the plaintiff, and inserted the two parts of lots that did belong to plaintiff. Plaintiff denies that the court had jurisdiction so to do. It is insisted that the district court had no power to make an original assessment, and that there was no evidence to show at what valuation the assessor included the three lots, nor what the value of the two parts of lots was. The fact is that plaintiff's power house and principal car sheds were situated on said parts of two lots, and that it was said lots that were in fact included in the valuation, and by mistake described as the three lots. Plaintiff asked the equalization board to make this correction, but it failed to do so, and on the plaintiff's appeal the district court had jurisdiction to do it. It was not an original assessment, as in *Brown v. Town of Grand Junction,* 75 Iowa, 488. In that case Brown had been assessed ten thousand dollars upon goods and merchandise when he did not own any, but it appeared that he had moneys and credits upon which he might properly have been assessed that amount. It was held error to allow defendants to amend, and ask an assessment on moneys and credits, because no such issue was presented by the appeal. By plaintiff's application the issue was presented as to its right to have the error in the description of the lots corrected. The lots that plaintiff did own were

Vol. 106 Ia—31

the ones included in the valuation, and the court had jurisdiction to correct the assessment in that particular.

IV.    Plaintiff contends that the assessment in question, in so far as it exceeds seventy thousand dollars, is excessive. Defendants' counsel cite *Capital City Gas Light Co. v. Charter Oak Ins. Co.,* 51 Iowa, 31.    *In re Des Moines Water Works Co.,* 48 Iowa, 324, and *Oskaloosa Water Co. v. Board of Equalization of City of Oskaloosa,* 84 Iowa, 407, and insist, upon the authority of those cases, that plaintiff's property lying without the defendant city should be included in the assessment as appurtenant to the real estate in said city.    In *Brown v. Town of Grand Junction, supra,* it is said: "We think the court could not try any other issue than that presented by the appeal." It is further said: "It never has been held by this court that the district court has power to make an original assessment of property for taxation." Turning to this record, we see that the assessment made by the assessor, and revised by the board and by the district court, was of the plaintiff's property within the city of Cedar Rapids only.    The defendants have never assumed to include any of the property outside of said city in the assessment under consideration, and the plaintiff is not asking that it be included.    In taking the testimony, both parties proceeded upon the theory that, if the property was not subject to assessment by the executive council, then only that part lying within the defendant city could be assessed by it.    True, there is some reference to the value of outlying property, but it is merely incidental to the inquiries as to the value of that within the city.    We are not called upon to determine whether that part of the property lying without the defendant city might have been included in this assessment, nor to consider its value, as no such issues are presented by this appeal.    To add this property to the assessment would be quite different from correcting a misdescription of property that was valued and included.

V.    We now inquire as to the value of plaintiff's property included in this assessment.    Estimating values is often

so largely a matter of judgment that such estimates cannot always be said to be perfectly accurate. The testimony on this subject is somewhat voluminous, and we will not notice it in detail. Mr. Hall, president, Mr. Disrens, superintendent, and Mr. Elsom, former superintendent, testify on behalf of the plaintiff. These gentlemen testify from an intimate knowledge of the cost and present condition of the property, and their testimony may be summed up as placing the value of the property in Cedar Rapids, including all the cars run in that city and half those run to Marion, at seventy-two thousand seven hundred and seventy-eight dollars. Mr. Bliss, called by the defendant, testifies from a large experience and knowledge of the cost of constructing and equipping such railroads; and, after a careful examination of this property, Mr. Bliss' valuation is upon a somewhat different basis and higher than that of the other witnesses.

We think his estimates in several particulars, especially as to the cost of rail in 1895, are excessive. The weight of the evidence is in favor of the conclusion that the value of plaintiff's property included in the assessment in question was seventy-two thousand seven hundred and seventy-eight dollars, and the assessment is modified accordingly.—MODIFIED and AFFIRMED.