THE CEDAR RAPIDS & MARION CITY RAILWAY CO., Appellee, v. ALBERT B. CUMMINS, Governor; etc., ET AL., Appellants.

**Interurban railways defined:** STATUTES CONSTRUED. Under Code, section 2033a, an interurban railway is one which extends from

within the limits of one municipal corporation to and within the limits of another and embraces the entire system; and while section 2033c of the Code Supplement provides that the portion within the corporate limits shall be subject to municipal regulation, it does not, however, destroy its interurban character.

**Assessment of interurban railways.**    Interurban railways are to be assessed by the Executive Council of the State under Code, section 1334, as steam railways are assessed.

**Statutes:** REPEAL BY IMPLICATION.    Where two statutes relating to the same subject are necessarily in conflict, the enactment later in point of time must be accepted as controlling.

*Appeal from Linn District Court.*— HON. W. G. THOMPSON, Judge.

THURSDAY, OCTOBER 27, 1904.

CERTIORARI proceedings to review the action of the executive council of the State, sitting as an assessment board, and for an injunction to restrain the enforcement of an assessment as made by said board upon the properties of the plaintiff corporation. The facts recited in the petition filed by plaintiff are, in substance, that it is, and has been for more than ten years, the owner of, and engaged in operating by electricity only, certain lines of electric railway in Linn county, as follows: A certain line extending from the city of Cedar Rapids to and through the town of Kenwood Park, and thence through the township of Marion to and into the city of Marion; also lines of electric street railway in the city of Cedar Rapids. In respect of the mileage of the lines, it is said that included within the corporate limits of the city of Cedar Rapids there are, all told, 9.26 miles; in Kenwood Park, .80 miles; in Marion township, .78 miles, and in the city of Marion 1.22 miles. The power house and power plant where electricity is generated for the operation of said lines is situated wholly in the city of Cedar Rapids.

Plaintiff says that the franchise under which it oper-

ates its line between the cities of Cedar Rapids and Marion was acquired under chapter 32, page 28, Acts Eighteenth General Assembly, along a certain highway known as a "boulevard," and that it is now the owner and in use of such franchise; that the town of Kenwood Park has been incorporated since the taking effect of said act; that since the taking effect of chapter 81, page 49, Acts Twenty-ninth General Assembly, plaintiff has at all times and upon all its said lines operated cars for the transportation of passengers, mail, baggage, and such parcels, packages, and freight as it has carried, using for all such purposes passenger or combination baggage cars only; that it designs and intends to continue to do so in the future. By reason of such facts plaintiff insists that its lines, as located within the limits of said cities and the said incorporated town, constitute a street railway only, and is subject to the laws governing street railways. It is then alleged that the defendants are the Governor, Secretary, Treasurer, and Auditor of State, respectively, and are each members of, and constitute, when acting together, the executive council of the State. The other defendants named are the members of and constitute the board of supervisors of Linn county and the county auditor of said county. That in the year 1903 the executive council assumed to value and assess said lines of railway for taxation for the year 1903, and thereafter transmitted to the county auditor of Linn county a statement of the assessment as thus assumed to be made by it, and that the board of supervisors and auditor of said county have proceeded to act upon such statement in the manner and form as provided by section 1337 *et seq.,* being the provisions of the Code relating to the assessment of railway properties generally. The action on the part of the executive council and the board of supervisors is alleged to have been without authority of law, without jurisdiction, illegal, and void.

Plaintiff says it has no plain, speedy, and adequate

remedy other than by *certiorari* to prevent the levy of taxes upon its properties pursuant to such unlawful proceedings, and a writ is prayed accordingly; and that upon hearing, the proceedings so had as alleged may be declared illegal and void.   The defendants, the members of the executive council, appeared, and for themselves individually and as members of the council moved the court to dismiss the petition upon the ground, among others, that the act complained of was one wholly within the jurisdiction of the council, and that the defendants, acting as such council, had full power, authority, and jurisdiction to assess the railway of plaintiff for taxation in the year 1903, and that the act of defendants in making such assessment was therefor valid. Upon hearing said motion was overruled, and an order was made directing a writ to issue as prayed.   Defendants took exception, and elected to plead no further.

From the order as made the defendants appeal.— *Reversed.*

*Charles W. Mullan,* Attorney General, for appellants.

*Chas. A. Clark & Son* and *Wm. G. Clark,* for appellee.

BISHOP, J.— The motion by defendants is in the nature of a special demurrer to the petition.   It was so treated in the court below and may be so considered here. The question presented has relation solely to the character of the plaintiff company as disclosed by its petition, and the power of the executive council to make assessments of its property for the purposes of taxation.   The contention of plaintiff is that it is a street railway; that it acquired the right to construct its line from the city of Cedar Rapids to the city of Marion by virtue of the act of the Eighteenth General Assembly, page 28, chapter 32, now section 2026 of the Code, and that by the construction and operation of such line it did not lose its character as a street railway. The statute invoked reads as follows: " Any corporation

organized under the laws of the State to operate a street railway in any city or town may, for the purpose of extending its railway beyond the limits thereof, locate, build and operate, by animal or other power, its road over and along any portion of the public road which is one hundred feet or more wide," etc. Accordingly, the conclusion is drawn and insisted upon that thereafter as before assessments against its property were authorized by local assessors, only, and in the manner incident to the assessment of property of individuals, and in respect attention is called to our holding in *Railway v. Cedar Rapids,* 106 Iowa, 476. In that case — the plaintiff there being the plaintiff here — it was made to appear that an attempt had been made by the executive council of the State to assess the railway properties here in question, and the action was brought upon the theory, as in the instant case, that such properties constituted lines of street railway only, and hence were not subject to assessment by the executive council. The contention of plaintiff there made was upheld, and it was said: " The fact that the line between Cedar Rapids and Marion was laid and operated along the highway, as authorized by said act [of the Eighteenth General Assembly] relating exclusively to street railways, seems to us conclusive that the plaintiff is a street railway corporation, and not a railway corporation within the meaning of section 1317 [relating to assessment of railway properties by the executive council] of the Code of 1873." Our attention is also called to the provision of section 1343 of the present Code, being as follows: " The lands, buildings, machinery, poles, wires, overhead construction, tracks, cables, conduits and fixtures belonging to individuals or corporations operating railways by cable or electricity, shall be listed and assessed in the assessment district where the same is situated." It is conceded by the Attorney General that, if this were all, the ruling of the trial court was correct, and should be sustained. But it is pointed out by him that the statute law governing

the subject-matter underwent a change by virtue of the act
of the Twenty-ninth General Assembly, page 49, chapter 81,
now appearing as sections 2033a *et seq.,* Supplement to
the Code; that by said sections the character of interurban
railways is fixed, and the rights and obligations thereof
defined; and it is his contention that the instant case is to
be ruled by the provisions of such act. The provisions are
as follows:

Section 2033a. Interurban railway defined. Any
railway operated upon the streets of a city or town by elec-
tric or other power than steam, which extends beyond the
corporate limits of such city or town to another city, town
or village, or any railway operated by electric or other
power than steam, extending from one city, town or village
to another city, town or village, shall be known as an inter-
urban railway, and shall be a work of internal improvement.
Section 2033b. What statutes apply. The words rail-
way, railway company, railway corporation, railroad, rail-
road company, and railroad corporation, as used in the Code
and Acts of the General Assembly, now in force or hereafter
enacted, are hereby declared to apply to and include all
interurban railways, and all companies or corporations con-
structing, owning or operating such interurban street rail-
ways, and all provisions of the Code and Acts of the General
Assembly, now in force or hereafter enacted, affecting rail-
ways, railway companies, railway corporations, railroads,
railroad companies and railroad corporations, are hereby
declared to affect and apply in full force and effect to all
interurban railways, and to all interurban railway com-
panies or railway corporations constructing, owning or
operating such interurban railways.

Accordingly the record presents two questions of vital
importance: Is the railway system owned and operated by
the plaintiff company, an interurban railway within the
meaning of the statute provisions last above quoted? And,
if so, does such railway come within the operation of section
1334 of the Code Supplement, providing that " on the
second Monday in July in each year the executive council

shall assess all of the property of each railway corporation in the State," etc. ? We are of opinion that both questions must be answered in the affirmative.

First. Accepting the facts to be as pleaded by plaintiff, and giving to the language of section 2033a its plainest meaning, and stopping there, it seems to us that argument is

1. INTERURBAN RAILWAYS DEFINED: statutes construed. foreclosed. There is no room for debate. But counsel for appellee invoke the provisions of section 2033c, Code Supplement, and insist that for the purpose of this case the same must be accepted as giving character to and fixing the status of that portion at least of the railway system included within city or town limits. Section 2033c reads as follows: " Any interurban railway shall, within the corporate limits of any city or town, or of any city acting under special charter, upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combination baggage cars only, be deemed a street railway, and be subject to the laws governing street railways." We cannot admit of soundness in the argument. Section 2033c must be read in connection with the preceding sections. Section 2033a defines an interurban railway, and, as we have seen, the railway in question comes within the definition given. Such definition is recognized by section 2033c, and must be accepted as confirmatory of the intention to classify all railways coming within the definition found in section 2033a as interurban railways; otherwise, and accepting the argument for appellee as sound, in the instant case we would have to deal with an interurban railway as to that portion of the line extending through Marion township, and distinctively a street railway as to those portions of the line being within the limits of the cities and towns named. We cannot think any such result was intended. The Legislature was dealing with lines of interurban railway, and, indeed, the definition found in the statute accords with the common understanding. Both agree that an inter-

urban line is one extending from within the limits of one city or town to and within the limits of another city or town. And it is not conceivable that it was the purpose of section 2033c to provide that an interurban line is not an interurban line, save only from city or town limit to city or town limit. To say otherwise would not only involve a contradiction of terms, but it would lead to a most absurd result, and neither of such is to be considered as within the intention of the Legislature. As we read the statute, it means that as to those portions of its line being within city or town limits a corporation operating an interurban railway shall, in respect of the operation of its line, be held to the rights and obligations of a street railway only. The character of the line as an interurban railway is not changed, but it is to be " subject to the laws governing street railways" The statute simply recognizes the necessary existence of differences in the matter of regulation between urban and suburban districts; and this by general law, or, in the case of the former, by municipal ordinance.

In respect of the second question, the reason for our conclusion can be stated in few words. By the act of the Twenty-ninth General Assembly, amendatory of section 2026 of the Code, interurban street railways 2. ASSESSMENT OF INTERURBAN RAILWAYS. are to be included within the meaning of all provisions of the Code and acts of the Legislature having relation to or affecting railways or railroads. And the provision of section 1334 of the Code is that " all railways " shall be assessed by the executive council.

It is true that statutes in apparent conflict with each other are to be reconciled so that both may stand where possible. It is also true that repeals by impli- 3. STATUTES: repeal by implication. cation are not to be favored. But these rules of construction, although well established, cannot be made applicable to the situation with which we are confronted. It may be granted that there is no express repeal of section 1334 of the Code, providing for assessments

by local assessors. But an assessment by two distinct officers or boards, was surely not intended, so that it is not possible that local assessors may act, and that the executive council may also assess " all railroads within the State." Hence we must be governed by the doctrine that of two acts necessarily in conflict with each other the latter in point of time of enactment must be accepted as controlling. The case does not present, as counsel for appellee seems to think, a new system of taxation. The provision is simply that a system established and in force shall be held to apply to all properties coming within the enlarged definition of " railways." The case of *McLeod v. Railway,* 125 Iowa, 270, may·be cited as affording an illustration of our view of the effect of the act of the Twenty-ninth General Assembly.

We conclude that the district court was in error in overruling the motion of defendants, and accordingly its action is *reversed.*