WATERLOO AND CEDAR FALLS RAPID TRANSIT CO., Appellant, v. THE BOARD OF SUPERVISORS OF BLACKHAWK CO. ET AL., Appellees.

**Taxation:** STREET AND INTERURBAN RAILWAYS. Where the same company owns and operates a street railway in each of two neighboring cities and also a connecting interurban line, the cars of which are run over portions of the tracks of the street railways and the properties are otherwise used in common, the entire system constitutes an interurban railway for the purpose of taxation and will be assessed as a whole by the Executive Council.

*Appeal from Blackhawk District Court.*— HON. FRANKLIN C. PLATT, Judge.

WEDNESDAY, JULY 11, 1906.

SUIT in equity to enjoin defendants from enforcing the collection of taxes levied by the executive council of the state upon plaintiff's street railway in the cities of Waterloo and Cedar Falls. A demurrer to the petition was sustained, and plaintiff appeals.— *Affirmed.*

*Chas E. Pickett,* for appellant.

*S. T. Mears* and *A. B. Lovejoy,* for appellees.

Deemer, J.— This case involves a construction of sections 2033a, 2033b, and 2033c, of the Supplement to the Code of 1897, which so far as material read as follows:

Section 2033a. Any railway operated upon the streets of a city or town by electric or other power than steam, which extends beyond the limits of such city or town to another city, town, or village, or any railway operated by electric or other power than steam, extending from one city, town, or village, to another city, town, or village, shall be known as an interurban railway, and shall be a work of internal improvement.

Sec. 2033b. The words railway, railway company, railway corporation, railroad, railroad company, and railroad corporation, as used in the Code and acts of the General Assembly, now in force or hereafter enacted, are hereby declared to apply to, and include, all interurban railways, and all companies or corporations constructing, owning or operating such interurban street railways, and all provisions of the Code, and acts of the General Assembly, now in force or hereafter enacted, affecting railways, railway companies, railway corporations, railroads, railroad companies, and railroad corporations, are hereby declared to affect and apply in full force and effect to all interurban railways, and to all interurban railway companies or railway corporations constructing, owning or operating such interurban railways.

Sec. 2033c. Any interurban railway shall, within the corporate limits of any city or town, of any city acting under a special charter, upon such streets as it shall use for transporting passengers, mail, baggage, and such parcels, packages, and freight as it may carry in its passenger or combined baggage cars only, be deemed a street railway, and be subject to the laws governing street railways.

Material to our injury are the following facts taken from the petition. In 1855 the Waterloo Street Railway Company constructed a street railway in the city of Waterloo. The cars were propelled by animal power. It was operated as such railway until 1896, when plaintiff having acquired the franchise and property equipped it as an electric street railway, the city having, by appropriate ordinances, granted it the right to do so. Several years prior to 1897, the Cedar

Falls & Northern Railway Company built a street railway in the city of Cedar Falls. Upon this system the cars were propelled by gasoline engines. In 1897 plaintiff acquired the franchise and property of that corporation, and the city, having granted it the right, equipped it as an electric street railway. In 1898 plaintiff built an interurban line between Waterloo and Cedar Falls, a distance of about six miles. At the time of the construction of the interurban line from Waterloo to Cedar Falls, the plaintiff, for the purpose of equipping its interurban system separate and independent from its local street railway system in Waterloo, constructed a line known as the "Mulberry Street Line" for the exclusive use of its interurban cars, so that in coming into the city of Waterloo the interurban cars are required to pass over only three blocks of plaintiff's local system before reaching the said Mulberry Street line, and after leaving the said Mulberry Street line only about two blocks over the local line in reaching its terminals. In 1901 plaintiff built an interurban line between Waterloo and the village of Denver, in Bremer county. The interurban cars from this line pass over one block of plaintiff's local lines before reaching the Mulberry Street line, and about two blocks after leaving it in reaching its terminals. The three blocks of local line thus used by the Denver interurban cars are the same as those used by the Cedar Falls interurban cars. For the further purpose of equipping its interurban lines distinct and independent from its local street railway lines, plaintiff constructed a belt line from a point outside of the residence district of the city, and of the then city limits, around a portion of the city, entering the city over the right of way of the Chicago & Great Western Railway, for the purpose of transporting all of its in and outgoing freight thereover, so that none of its freight would pass over its lines in the city of Waterloo. The total length of plaintiff's local street railway lines in Waterloo traversed by all of its interurban cars at the time of the assessment complained of was one thousand

nine hundred and forty-four feet, and in the city of Cedar Falls, two thousand nine hundred and ninety-five feet. Plaintiff has, and operates, in Waterloo and Cedar Falls fifty thousand two hundred and thirty-nine feet, or about nine and one-half miles of street railway which are not touched or traversed by its interurban cars. On these plaintiff runs passenger cars such as are ordinarily used for city passenger service. On the interurban lines it runs what are ordinarily known as " interuban cars "; that is to say, cars larger in all respects and differently constructed than cars used exclusively for city passenger service. The local lines in Waterloo and Cedar Falls are used and operated strictly and solely for local street railway purposes without reference to the interurban system of the plaintiff, and independent of plaintiff's interurban lines, and are operated just as they had been before the construction of the interurban lines. These local lines do not extend beyond the limits of either of said cities, but are entirely within the corporate limits, and are run and operated under ordinances granting plaintiff the right to construct street railway systems in said cities. Plaintiff keeps a separate and distinct record of the business done on its local street-car system and its interurban lines, and the same are managed and treated by plaintiff as separate and distinct systems. The only connection, if such it may be called, according to plaintiff's petition, between plaintiff's local street railway systems as aforesaid and its interurban lines, is that transfers are given to passengers coming into the city of Waterloo or the city of Cedar Falls, by which a passenger can be transferred to a local line, and be carried to his destination, and transfers are given passengers on the local system who desire to be transferred to the interurban lines, and carried as aforesaid to the city limits.

It is contended that the local street railway systems are not a part of the interurban system, that the same are not subject to assessment by the executive council, but should be listed and assessed in the assessment district where situated,

and under the law governing the assessment of taxes against street railways. It is also argued that the assessment of said lines by the said executive council is unlawful and without authority, and the court is asked to enjoin the defendants from carrying out the assessment made by the executive council.

Section 1334 of the Code provides for the assessment of all the property of each railway in the state, excepting lots and other real estate not used in the operation of the road by the executive council; and it appears that the council did assess plaintiff's system above described as a railway, and certified the same to the defendant board of supervisors as required by law. Plaintiff insists that that part of its property not used for interurban purposes should not have been so assessed. In *Cedar Rapids & Marion Co. v. Cummins,* 125 Iowa, 430, we had occasion to consider this question, and we there said:

It is not conceivable, that it was the purpose of section 2033c to provide that an interurban line is not an interurban line save only from city or town limit to city or town limits, . . . as we read the statute it means that as to those portions of its line being within city or town limits, a corporation operating an interurban railway, shall, in respect of the operation of its line, be held to the rights and obligations of a street railway only. The character of the line as an interurban railway is not changed, but it is to be subject to the laws governing street railways. The statute simply recognizes the necessary existence of differences in the manner of regulation, between urban and suburban districts; and this by general law, or in case of the former by municipal ordinance.

The conclusion in that case was that the character of the road being established, by the statutes heretofore quoted, as an interurban one, its entire property used for the operation of the road was properly assessed by the executive council. Appellant attempts to distinguish that case from this; and says that it has no fault to find with that decision in so far as it applies to lines within the corporate limits

used for interurban purposes, or over which its interurban cars pass; and that this was the only question involved in that case. It relies chiefly upon section 2033a of the Code, defining interurban railways, and says that a street railway system is not converted into an interurban one because the interurban cars run over a small portion of the street railway tracks. Many suppositious cases are given, as where two systems are owned by independent concerns, or where the two are merged into one after construction and operation, which are well enough to be considered, but are not, of course, involved on this appeal.

The real basis of the argument is that the nature of the property should be determined with reference to its use, and not with reference to its ownership. But this is manifestly unsound. In the broadest sense ownership must to a large extent determine the character of an assessment. If the plaintiff does not own or operate an interurban railway it cannot be assessed therefor. Of course, the nature of the property does not depend primarily upon its ownership; but the character of the assessment to be levied against it may be made determinable thereby. This is distinctly affirmed in the Cedar Rapids Company case before cited. Plaintiff might, of course, own a street railway, and an interurban one independent thereof, and having no connection therewith; but when the two are combined into one system, as in the Cedar Rapids case, the character thereof may be defined by the Legislature for the purposes of taxation, and this is what we think the Legislature intended to do. The fact that in keeping its books plaintiff separates the two is of no consequence. Surely the Legislature did not intend this to be the test as to the character of the assessment to be made upon the property. It is not important, either, as to which line or system was first constructed; for, in either event, when a corporation concludes to engage in the interurban business, and uses part of a street railway line theretofore constructed for interurban business, it, under the stat-

utes quoted, converts the street railway into part of the inter-urban system for purposes of taxation.   If this were not true great difficulties would arise in fixing the value of the road-bed, rails, bridges, etc., which are used jointly.   If used for street railway purposes as well as for interurban business, should this part of the line be assessed as wholly for inter-urban purposes, or partly for such and partly for street rail-way purposes or as a street railway, and how shall such taxes be apportioned?   This may have been, and doubtless was, one of the reasons for the passage of the law we are now con-sidering.

Appellant's counsel says that the object of the law was that the line should be assessed as a whole by one assessing body, and not divided into parts, and assessed by different assessing bodies, with the usual nonuniformity incident thereto.   With this statement we fully agree.   If an inter-urban company comes into a city under a lease with a street railway company for the use of the tracks of the latter, it, of course, does not own the property, and could neither be assessed therefor nor would its act convert the street railway company into an interurban one.   All depends upon the ownership of the two systems.   If separate, there are no diffi-culties, for each is assessed for its own.   If by the same company, the entire property should be assessed as one or the other; that is to say, either as a street railway, or as an inter-urban one.   The Legislature has plenary power in classify-ing property for taxation, and may make this classification dependent not only upon use but upon ownership as well; this, of course, so long as it preserves uniformity, and ob-serves other fundamental rules as to taxation.   Every ques-tion raised is, in effect, determined by the case already cited. None of the provisions of the laws quoted were overlooked or disregarded.   It is not for the corporation or company, by a system of bookkeeping, to determine what part of its line shall be street railway, and what part interurban.   In this case the company gives transfers and operates all its

lines practically as one property, save in the matter of book-keeping.

Moreover, no company should be allowed to change the character of its property from time to time either by curtailing or enlarging the use of its cars over the streets of a city. Taking the statutes quoted as a whole, we think it clear that the Legislature has, for the purposes of taxation, made ownership one of the tests whereby to determine the character of an interurban railway, for the purposes of taxation; and that plaintiff company, within the meaning of these statutes, has made its system an interurban one. One illustration will suffice to show the soundness of this conclusion. Suppose the interurban cars should pass over all the street railway tracks, save upon two short streets; should the property upon these two streets be assessed independently of the other property owned by the company — that is to say, by the local assessors? And, if so, how is the value thereof to be fixed? Again, suppose that for part of a year the interurban cars pass over practically all the streets occupied by the street railway, and for the rest of the year they do not pass over more than one street, and for but a short distance on that. These propositions suggest the propriety of such legislation as we are now considering, and the necessity for giving it a reasonable construction to meet the evident purposes and objects thereof.

The rule sustaining the demurrer was correct, and it is *affirmed.*