THE FIRST NATIONAL BANK OF ESTHERVILLE, ET AL, Appellants, v. THE CITY COUNCIL OF ESTHERVILLE, ETC., Appellee.

**Assessment of national bank stock:** APPEAL:  QUESTION NOT RAISED
1    BELOW.  An objection to the action of a board of equalization that it has assessed national bank stock at a higher rate than other moneyed capital cannot be raised for the first time in the Supreme Court.

**Assessment of bank stock:** VALUATION:  RECORD.  Taxing officers
2    may use any means at their command in assessing national bank stock to arrive at its actual market value in the ordinary course of trade, and are not bound by the value shown by the books of the bank; and are not required to make of record more than the bare conclusion reached.

**Appeal from assessment:** SCOPE OF JUDICIAL REVIEW.  The district
3    court on appeal from an assessment has authority only to deal with the correctness of the conclusion reached by the equalization board; it may reduce or cancel the entire assessment as the record warrants, but cannot increase it.  The court will presume in the first instance, however, that the board acted properly and the burden is upon the appealing taxpayer to overcome the presumption.

**Assessment of national bank stock:** VALUATION:  EVIDENCE.  Stock
4    in a national bank is tangible property in and of itself, and when assessed to the holder its valuation is to be determined without relation to the property holdings of the corporation, upon the basis of its market value to be ascertained by a con-

sideration of every fact condition having the effect to influence or control its value, and not arbitrarily at its book value.

*Appeal from Emmet District Court.*— HON. A. D. BAILIE, Judge.

WEDNESDAY, JULY 3, 1907.

REHEARING DENIED, TUESDAY, NOVEMBER 14, 1907.

THIS is an appeal by the First National Bank of Estherville and its several stockholders from the action of the city council of Estherville, sitting as a board of review and equalization of assessments made for the purposes of taxation. On trial of the appeal, a decree confirming the action of the board was entered, and therefrom this appeal is prosecuted. — *Affirmed.*

*Soper, Allen & Alexander,* and *C. W. Crim,* for appellants.

*Byron M. Coon* and *Myerly & Davidson,* for appellee.

BISHOP, J.— Following the docketing of the appeal from the board in the court below, the appellants appeared and filed a pleading, containing a recital of facts and making demand for relief. Of the facts so recited the following were not disputed on the trial, and we set them forth as part of the history of the case: The appellant bank is a corporation organized under the national banking act of the United States, having a paid-up capital stock of $100,000, divided into shares of $100 each. In January, 1906, an officer of the bank furnished to the city assessor a statement of the financial condition of the bank, together with a list of the stockholders. On its face the statements so furnished disclosed that the resources of the bank, including real estate valued at $12,500, amounted to $479,911.46, and that this sum was balanced by the aggregate of the liabilities; the latter including the capital

stock, a surplus fund of $20,000, undivided profits, $1,994.90, and an undistributed quarterly dividend amounting to $2,500. After excluding the value of the real estate owned by the bank, the assessor made assessments against the several stockholders on the basis of the par or face value of the stock. The work of the assessor coming on for review before the board, a raise in the assessment to $1.30 per share was ordered and entered. These facts having been set forth, two matters of contention were then presented by the pleading: (1) That the value of the stock as shown by the books of the bank did not exceed $112 per share, and hence the raise in assessment was exorbitant and unjust; (2) that the assessment as raised was unfair and inequitable, in that the stock was not valued in proportion to other like personal property in the city of Estherville, but grossly in excess of the assessed value of such other property. And the pleading contains an allegation that these were the matters of contention presented to the board. An answer was filed on behalf of the board, and therein it was denied that the assessment as raised was unjust; that, quite to the contrary, the actual and market value of the stock was even greater than that fixed in the raised assessment. And it was denied that the assessment was unfair as related to assessments on other like property.

On the trial of the appeal, it was conceded that the statement furnished by the bank to the assessor was correct in its figures, according to the books of the bank. This concession having been made, the bank rested thereon that branch of its case having to do with the value of its stock. It then introduced evidence showing that three other banks — one a state, one a savings, and one a private bank — were doing business in the city. By such evidence it was made to appear that these banks also furnished statements to the assessor, and that the assessments as made by him were predicated on such statements, respectively. In the case of the savings bank, the statement showed capital stock $50,000, surplus $10,000; and from the aggregate of these deducted an item of $15,000,

designated under the head of liabilities as "Amount of Notes." In the case of the state bank, the statement showed capital stock $50,000, surplus $10,000; and from the aggregate of these was deducted an item of $20,000, designated as "Total Amount of Debt." In the case of the private bank, the statement showed the bills receivable and money in bank on one side of the account, and the bills payable and deposits on the other side. And the value for assessment was arrived at by simply striking a balance. It will thus be seen that the stocks of the state and savings banks were assessed on a basis of valuation below par, while the private bank was assessed on the basis of book value. And it may be added in this connection that the record discloses that the assessments as made against the state and savings bank, respectively, were raised by the board to $120 per share. Over objection, the board was allowed to make proof that at or about the time in question several blocks of the stock of the appellant bank had changed hands on a basis of $175 per share cash; that one of the officers of the bank had recently purchased ten shares at that price; and, further, that transfers of the savings bank stock had been made at $137 per share.

What is said foregoing comprehends sufficiently in detail the fact situation of the case, and accordingly we may now pass to a consideration of the questions presented by the appeal. In doing so we shall first dispose of a

1. ASSESSMENT OF NATIONAL BANK STOCK: appeal: question not raised below.

matter of contention brought forward for the first time in argument in this court. This contention is that through the action of the defendant board, as complained of, there was worked a violation of section 5219 of United States Revised Statutes [U. S. Comp. St. 1901, p. 3502] having to do with the subject of state taxation of national shares. As confessedly such matter was not presented to the board, or suggested on the trial in the court below, we cannot give consideration thereto on merits in this court. And this is to follow our repeated decisions bearing on the subject. *Railway Co. v.*

*Cedar Rapids,* 106 Iowa, 476; *Trust Co. v. Fonda,* 114 Iowa, 728.

Stated in simple form, the question first in order is this: Are assessors, boards of review, and, on appeal, the courts, bound by the showing of the books of a national bank in arriving at the value of the stock of such bank for the purposes of assessment for taxation? Naturally enough, we turn first to the statutory provisions on the subject, for it is there that the measure of the power to assess and tax must be found. By Code, section 1305, it is provided that all property subject to taxation shall be valued at its actual value, and " actual value of property as used in this chapter shall mean its value in the market in the ordinary course of trade." And by section 1322 — being part of the same chapter — it is provided that shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. To aid the assessor in fixing the value of such shares, the bank is required to furnish him with a verified statement of its financial condition, and " from such statement and other information he can obtain " he shall fix the value of such stock, " taking into account the capital, surplus and undivided earnings." The duty of the board of equalization is defined in Code, sections 1370, 1371. It " shall adjust assessments . . . by raising or lowering the assessment of any person . . . . corporation . . . as to any or all the items of his assessment, in such manner as to secure the listing of property at its actual value," etc.; and " the board shall . . . raise or lower the same as in their opinion will be just." In our view these provisions of statute clearly contemplate that the board, as well as the assessor, shall have the right to seize upon any information within reach that may furnish aid to a conclusion. It may receive evidence or it may act on the knowledge of its own members. *Smith v. Board,* 30 Iowa, 531. And there is no requirement that the

2. ASSESSMENT OF BANK STOCK: valuation record.

board shall make record of more than a bare expression of the conclusion reached by it in any given case.

On appeal to the District Court, the statute (Code, section 1373), provides for a hearing as in equity. This, however, is not to be construed as clothing the court with jurisdiction to sit as an assessing tribunal. *Frost*

3. APPEAL FROM ASSESSMENT: scope of judicial review.

*v. Board,* 114 Iowa, 103; *Farmers', etc., Co. v. Fonda,* 114 Iowa, 728. As related to the amount of an assessment appealed from, the court has authority only to deal with the correctness of the conclusion reached by the board. It may reduce, or even cancel and set aside, but it cannot raise, the assessment. *Farmers', etc., Co. v. Fonda, supra; Bank v. Burlington,* 54 Iowa, 609. And of necessity the court can reach a conclusion only by giving consideration to the record, and to the competent and relevant evidence originally brought before it bearing on the subject. *Grimes v. Burlington,* 74 Iowa, 123. The court will presume in the first instance, however, that the board acted properly and upon sufficient evidence as to values, and the burden is on the appealing taxpayer to overcome this presumption, and to establish the injustice or inequity of the raised assessment. *King v. Parker,* 73 Iowa, 757; *Frost v. Board, supra.*

The appeal being in equity, and therefore triable *de novo* in this court, our inquiry takes this form: Have the appealing parties sustained the burden assumed by them of

4. ASSESSMENT OF NATIONAL BANK STOCK: valuation: evidence.

showing that the raise in assessment was unjust, for that the actual or market value of the stock was less than the sum fixed upon by the board? As we have seen, appellants rely solely for an affirmative answer to this question upon the condition of the bank as disclosed by the statement furnished the assessor. And it is the argument of counsel that Code, section 1322, was never intended to authorize a valuation of stock otherwise than on the basis of the value of the tangible property of the bank; that, as the statement to the assessor was admittedly correct in its figures, a raise in the assessment could only

be accomplished by the inclusion of good will, and other intangible ingredients, as elements of value. And for this counsel says there is no warrant of authority. Within certain limits this argument would have force, if we were dealing with an assessment made against the bank itself, based, as of necessity it would have to be, on the tangible assets owned by it. Thus no one would conceive that the actual value of a written promise to pay, held by a bank, or of a package of currency lying in its vaults, could be affected by matters such as the location of the bank, the character of its officiary, its good will, etc. But we are not dealing with the bank as such, nor, except as matter of evidence, with its assets, tangible or intangible. We have to do solely with an assessment against stockholders, and on tangible property, the stock of which they are the individual owners. That capital stock in a corporation is a species of tangible property in and of itself is not to be doubted. And it is property separate and distinct from the property holdings, as such, of the corporation. Upon this all the authorities are agreed. *Bank v. Tennessee,* 161 U. S. 146 (16 Sup. Ct. 456, 40 L. Ed. 645); *Owensboro v. Owensboro,* 173 U. S. 664 (19 Sup. Ct. 537, 43 L. Ed. 850).

Now, the term " property " includes everything of value, tangible or intangible, capable of being the subject of individual right or ownership. And market value " in ordinary course of trade " can have reference to nothing but the selling value; that is, the sum which in all probability can be realized therefrom if exposed for sale on the open market. Of course, in the case of commodities regularly on the market, as stocks, bonds, grain, cattle, etc., respecting which values are established either by concerted action on the part of dealers, or as a result of the operation of the laws of trade, published quotations may be and are accepted as evidence of value without further inquiry. And this is so because, as it is well known, men generally buy and sell having reference thereto, and intending buyers cannot hope to purchase for less

than the quoted price, and an intending seller cannot in reason expect to obtain more. Where, however, a commodity is not regularly on the market, proof of value, where in issue, must come from original sources. Now, in business life, men buy property with intent to use beneficially, or with the expectation of selling, in turn, to another buyer at a profit. It follows that in the very nature of things the extent of the expected benefit, or the chance of profit, enters into the calculation, and influences, if it does not control, the market price. And in this view it is not possible that there should be any fixed or arbitrary standard for the ascertainment of values. So it is that in respect of any particular item, or class of items, of property, all those things which from any cause inhere in or attach to the same, and which contribute in any degree to its desirability, are always taken into account in arriving at a conclusion. Indeed, it is not conceivable that the question of value could be determined adequately in any other way. And from this it follows that in estimating the value of stock in a bank or other corporation every fact condition having effect to influence or control must be considered. And this is true because both intending sellers and buyers naturally take all such matters into consideration in determining upon a sale or purchase. This may be sufficiently illustrated by considering what would be the probable result of a change in the management of the plaintiff bank, and persons obnoxious to the general public were placed in charge. Can any one doubt that a reduction in stock values would be the result? Or suppose that the bank for any reason should conclude to discontinue as a going concern, and take steps looking to liquidation. Could any one be in doubt as to the effect upon stock values? Our views as above expressed finds direct support in what was said by Mr. Justice White, speaking for the court, in *Bank v. Dodge,* 197 U. S. 70 (25 Sup. Ct. 384, 49 L. Ed. 669). " Under the law shares in national banks must be valued at their full cash value, which the statute defines to be the amount at which they would be

taken in payment of a just debt from a solvent debtor. These words are but synonomous with the requirement that, in assessing shares of stock, their market value must be the criterion." Also in discussing the term "market value" Justice White uses the following language: "What, then, was embraced in the assessment of the shares of stock at their full cash or selling or market value? It embraced, not only the book value of all the assets of the corporation, but the good will, the dividend-earning power, the ability with which the corporate affairs were managed, the confidence reposed in the capacity and permanency of tenure of the officers, and all those other indirect and intangible increments of value which enter into the estimate of the worth of the stock, and help to fix the market value or selling price of the shares." And, giving construction to a statute similar to ours, the Supreme Court of Oregon in *Ankeny v. Blakley,* 44 Or. 78 (74 Pac. 485), says: "Having now ascertained the meaning and purpose of Congress in the adoption of section 5219, *supra,* we will determine what standard of value should be adopted for the assessment of shares in bank stock, it being insisted that the measure of such value is the face or par value of the paid-up capital stock, increased by the undivided earnings or profits of the bank; that, while other species of personal property may fluctuate, and its value be best determined by what it will bring in the market, the value of shares of bank stock remains constant and invariable, so long, at least, as the capital remains intact and unimpaired and is capable of exact ascertainment; and that, therefore, in view of the statutory directions that such shares shall be taxed at their par value, it was intended that the book value should be the test, and not the true cash value, as it is elsewhere directed what personal property shall be valued at for the purpose of taxation. B. & C. Comp., section 3058. In this we are unable to agree with counsel. The section just noted prescribes that all personal property not exempt from taxation shall be valued at its true value in cash. Shares of bank stock are personal prop-

erty, and there is nothing in the language employed by section 3042, *supra*, to betoken or signify any intention on the part of the Legislature to set a different standard of value for that particular species of personal property, or that it should constitute any exception to the general provision, and, not being money which determines its own value, it must likewise be measured, as other personal property, at its true cash value."

Without further discussion, it is our conclusion that it was not the intention of the Legislature to provide for the assessment of bank stocks arbitrarily at their book value. Such is neither within the words of the statute or its meaning; and, as in making an assessment, any information apart from the books of the bank might be seized upon and made use of, so it was competent for the board and the courts to do likewise in determining upon the equity and fairness of such assessment. Now, as we have seen, there was proof that stock of the plaintiff bank was being transferred at $175 per share, and it does not appear that this was for purposes other than investment. And, as against this, there was only the showing of the book value. In this situation, and especially as the burden was on plaintiff, we think it cannot be said that the raise in the assessment as made by the board was unwarranted or contrary to equity.

Coming to the second ground of complaint, we may dispose of the same by saying that the record does not disclose any such discrimination as to warrant interference.

On the whole, we conclude that the decree should be, and it is, *affirmed*.