B. E. SWISHER v. INTERURBAN RAILWAY COMPANY, Appellant.

**Interurban railways:** CROSSING SIGNALS: STATUTES. The statute requiring a steam whistle and a bell to be attached to each locomotive engine and sounded upon approaching a ·highway crossing is made applicable to electric interurban railways by section 2033-b of the Code Supplement 1907, and failure of an interurban railway to give such signals is negligence *per se*.
McClain and Evans, JJ., dissenting.

**Same:** CROSSING ACCIDENT: NEGLIGENCE: SUBMISSION OF ISSUE. Under the evidence in this case the question of whether the motorman could have seen the animal killed in time to have stopped his car and thus avoided an accident was properly submitted.

**Same:** NEGLIGENCE: PLEADINGS: EVIDENCE. An allegation that the defendant in disregard of its duty so negligently and carelessly ran and managed the electric motor and cars in question that the injury complained of was occasioned thereby, was, in the absence of a request for a more specific statement, sufficient to permit evidence that the cars were not properly equipped or. adjusted with air brakes, and that the controller was not in proper condition.

**Same:** INSTRUCTIONS: HARMLESS ERROR. The giving of an instruction in this action having no possible reference to any feature of this case, though improper, was not misleading and therefore not ground for reversal.

**Same:** CROSSING SIGNALS: DUTY OF MOTORMAN. It is the duty of a motorman in charge of an electric car, if he sees, or in the exercise of reasonable care could have seen an animal upon the crossing, to give the statutory crossing signals; as. the same would be likely to frighten the animal off the track and thus avoid the danger of injury.

*Appeal from Dallas District Court.*—HON. JAMES D. GAMBLE, Judge.

SATURDAY, MARCH 11, 1911.

ACTION to recover damages for the loss of plaintiff's horse as the result of an accident at a highway crossing in which an electric car with two freight cars and a caboose attached thereto came into contact with said horse through the alleged negligence of defendant's motorman in charge of the electric car in failing to sound the whistle and ring the bell on said car, as required by law, on approaching said crossing, and his failure to give any other signal or warning of the approach of the car to the crossing, and also his failing to stop said electric car before it struck and killed the said horse. There was a trial to a jury, and a verdict for plaintiff for the value of the horse. From judgment on this verdict the defendant appeals. *Affirmed.*

*Guernsey, Parker & Miller, White & Clark,* and *Arthur G. Rippey,* for appellant.

*E. J. Kelley,* for appellee.

McCLAIN, J.—During the nighttime plaintiff's horse escaped from his premises and went along the highway to a point where it is crossed by the track of the defendant's

electric road. There it was struck and killed by defendant's car. There was evidence tending to show that, although the car was provided with an air whistle and a gong or bell, the whistle was not sounded nor the gong rung on approaching the crossing, even after the motorman observed the horse on such crossing. There was also evidence tending to show that the car was not stopped until it had passed three or four hundred feet beyond the crossing, although the motorman attempted to stop it as soon as he discovered the horse, which he did when the car was about seventy-five feet from such crossing. There was further evidence tending to show that the car was equipped with a controller, consisting of a knob, on which it was the duty of the motorman to press constantly with his hand in order that the electric power should be communicated to the propelling machinery of the car; and that, as was not unusual after such cars had been in use for some time, this controller remained pressed down without the pressure of the motorman's hand, which, at the time of approaching the highway crossing, was resting upon the windowpane, and not on the knob; and, further, that if the controller had been in the condition in which it was intended to be when in operation, the motorman, by removing his hand, could have stopped the car more quickly than he did by means of the lever regulating the application of the power.

I. The trial judge held that Code, section 2072, requiring a bell and steam whistle to be placed on each locomotive engine operated on any railway, and the whistle to be sounded sixty rods before a highway crossing is reached, and the bell to be rung from that time continuously until the crossing is passed, is made applicable to electric interurbans by section 2 of chapter 81, Acts 29th General Assembly (Code Supp. section 2033-b), which provides that the word "railway," as used in the Code, shall apply to and

1. Interurban railways: crossing signals: statutes.

include all interurban railways, and instructed the jury that if they found by a preponderance of the evidence that the defendant company failed to give the required signals by sounding the whistle and ringing the bell, and that if said signals had been given as required by law, the accident complained of would not have happened, then the defendant was liable for the resulting damage, and the verdict should be for the plaintiff.

The provisions of Code, section 2072, material for present purposes are as follows: "A bell and a steam whistle shall be placed on each locomotive engine operated on any railway, which whistle shall be twice sharply sounded at least sixty rods before a road crossing is reached, and after the sounding of the whistle, the bell shall be rung continuously until the crossing is passed; . . . and the company shall be liable for all damages which shall be sustained by any person by reason of such neglect. Any officer or employee of any railway company violating any of the provisions of this section shall be punished by fine not exceeding one hundred dollars for each offense."

The statute relied upon as making these provisions applicable to interurban railway companies (29th General Assembly, chapter 81, section 2; Code Supp. section 2033-b) is as follows:

The words railway, railway company, railway corporation, railroad company, and railroad corporation, as used in the Code and acts of General Assembly, now in force or hereafter enacted, are hereby declared to apply to and include all interurban railways, and all companies or corporations constructing, owning or operating such interurban street railways and all provisions of the Code and acts of the General Assembly, now in force or hereafter enacted, affecting railways, railway companies, and railway corporations, railroads, railroad companies, and railroad corporations, are hereby declared to affect and apply in full force and effect to all interurban railways, and to all interurban railway companies or railway corporations

constructing, owning or operating such · interurban rail-
.ways.

· The provisions found in the section of the Code, as
above quoted, became a part of the law of this state in
1884 (20th General Assembly, chapter 104), when there
were no interurban railroads in the state operated by elec-
tric power.   The provisions of the chapter of the Code to
which it was added have since been held not applicable to
interurban electric roads.   *Fidelity Loan & Trust Co. v.
Douglas,* 104 Iowa, 532; *Cedar Rapids, etc., R. Co. v.
Cedar Rapids,* 106 Iowa, 476; *McLeod v. Chicago & N.
W. R. Co.,* 125 Iowa, 270.   The reason for these decisions
need not be set out, for it is .not contended that Code, sec-
tion 2072, would apply to defendant, unless the subsequent
statute makes it applicable.

The majority of the members of court reach the con-
clusion that the statute above quoted, relating to interurban
railways, renders applicable to them the provisions of
Code, section 2072, and that the words "locomotive engine"
should now be interpreted to mean, in the case of interur-
ban railways, operated by electric power, the motor car of
such railway, and that. such motor car should be provided
with such a whistle as is now in common use on electric
motor cars—that is, an air whistle or something equivalent
in character—and that the gong with· which electric cars
are now usually equipped is an equivalent of the bell with
which the statute requires locomotive engines to be equipped,
and that on approaching a highway crossing the whistle of
the motor car should be sounded at least sixty rods before
the crossing is reached, and thereafter the gong, or equiva-
lent appliance, should be rung continuously until the cross-
ing is passed.   This court holds, therefore, that the trial
court did not err in giving the instruction already referred
to in this division of the opinion.

The writer (MR.. JUSTICE EVANS concurring) dissents

from this construction of the statute. They think that the provision as to interurban railways above quoted would be given full force and effect if, in the operation of steam locomotive engines on their tracks, they were required to provide such engines with whistles and bells, and sound them as the statute requires. It is to be noticed that the statute relating to interurban railways is not limited to, and does not by any language therein used specifically refer to, interurban railways on which electric motor cars are used. When the interurban statute was passed in 1902, there were, without doubt, in the state interurban lines upon which steam locomotive engines were, at least to some extent, employed in furnishing locomotive power, and it seems to the dissenting judges that the statute can be given full effect if it is held to require that when a steam locomotive is used on an interurban railway, it shall be equipped and operated as provided in Code, section 2072. While the term "locomotive engine" might very well be applied to an electric motor car, it is evident that in the statute these words are used to mean a steam locomotive engine, for at the time the statute was enacted no other form of motive power was in use in the railway business; and the requirement that a locomotive engine shall be equipped with a steam whistle seems clearly to indicate that the Legislature had in mind only a steam locomotive engine. If it had been intended in the enactment of the later statute to require that electric motor cars should be equipped with air whistles, and that such whistles should be sounded at least sixty rods before reaching a road crossing, then some provision of that kind would have been made.

As a reason why the language of Code, section 2072, should not be twisted into an application which does not appear to have been clearly intended by the subsequent statute, the dissenting judges beg also to suggest that the original statute is penal, and should therefore be extended .

under the subsequent statute only so far as the plain language employed by the Legislature requires. If section 2072 can be applied under the subsequent statute to some interurban railways to wit, those employing steam locomotive engines of some sort, without extending it, by perversion of its language, to interurban railways employing electric motor cars, then the extension should be strictly limited to such application as the subsequent statute plainly and not obscurely or inferentially authorizes. The rule that penal statutes are to be strictly construed is too well established to need a citation of authorities in its support.

The dissenting judges would be quite willing to agree that in view of the ordinary method of operating electric motor cars on interurban railways, the whistle should be sounded and the gong rung on approaching a highway crossing, and that a failure to give such signals might, under proper instructions, be found by the jury to constitute negligence; but they are not willing to agree that under the statute such failure constitutes negligence *per se*.

II.  It is contended that the court erred in submitting to the jury the question whether there was negligence of defendant's motorman in failing to stop his car before it struck the animal. This was one of the allegations of negligence in the petition, and, unless it was entirely without support in the evidence, it was not error to state it in presenting the issues to the jury. It seems to us that the testimony of the motorman as to what he did was not conclusive with reference to his care. He admits that he could not stop the car, after he saw the horse, before he reached the crossing, and it would seem self-evident that if it was possible to see the animal on the crossing at sufficient distance to stop the car before striking it, the motorman should have observed it at that distance and taken proper steps to avoid the accident. Whether the motorman could, in the exercise of reasonable care, have

2. SAME: crossing accident: negligence: submission of issue.

seen the animal in time to have stopped his car before reaching it was necessarily a question for the jury's consideration.

III. Errors are assigned as to the action of the court in overruling objections to questions by which plaintiff's counsel sought to elicit the fact that the cars were not properly equipped or adjusted as to air brakes, and the electric controller was not in proper condition. The ground of objection is that defects in the car and equipment were not alleged in the petition as constituting negligence. It appears, however, that the plaintiff alleged disregard of duty on the part of the defendant, by its agents and servants, in so carelessly and negligently running and managing the electric motor and cars that the injury complained of was occasioned. It seems to us that this allegation, although not very specific, was sufficient, in the absence of a motion for more specific statement, and that it covered the defect in the equipment of the motor and cars. The questions objected to were therefore not improper.

3. SAME: negligence: pleadings: evidence.

IV. The court gave several general instructions of a stereotyped form, one of which had no possible application to any feature of the case. Such instruction should not have been given; but as it could not possibly have misled the jurors in the determination of any questions submitted to them, the error was plainly without prejudice, and constitutes no ground for reversal.

4. SAME: instructions: harmless error.

V. An instruction is criticised in which the jury was told that if the motorman observed any animal upon the track, it was his duty to use any and all signals at hand to frighten the said animal from the track or crossing, if there was time to give such signals after such animal was seen, or should, in the exercise of ordinary care, have been seen. This was, perhaps, an inapt statement of the rule requiring the

5. SAME: crossing signals: duty of motorman.

exercise of reasonable care in giving such signals as would
be likely to frighten the animal from the track and pre-
vent injury to it.   There can be no question, however, as
to the duty of the motorman if he saw, or in the exercise
of reasonable care could have seen, the horse on the
crossing, to give warning signals by way of blowing the
air whistle or ringing the gong of the car, for such signals
would be calculated, even in the case of a dumb animal,
to cause it to get off the track and thus avoid the danger
of injury.   *Graybill v. Chicago, M. & St. P. R. Co.,* 112
Iowa, 738; *McGill v. Minn. & St. L. R. Co.,* 113 Iowa,
358.

In the opinion of the majority of the court there was
no prejudicial error, and the judgment is *affirmed.*

McCLAIN and EVANS, JJ., dissent from the views of
the majority stated in division I of the opinion.